UNITED STATES of America

v.

Stephen S. SEGALL, Jose A. Loynaz, a/k/a "Pepe", a/k/a "Doc", a/k/a "Jose Gomez", John Doe, a/k/a "Tio", a/k/a "Cieto", Alberto Fidel Dominguez-Agramonte, Stephen P. Gyland, Jr., Andrew C. Kniffin, Richard L. Kniffin, James W. Ellis, Brad Alexander, Beth Koehler, Catherine Davis, a/k/a "Cate", and Wanda Luck, Defendants.

No. 84–139–CR–SMA.

United States District Court, S.D. Florida.

Aug. 22, 1984.

Vincent Alto and Robert B. Cornell, Asst. U.S. Attys., Miami, Fla., for plaintiff.

Dick DeGuerin, Coconut Grove, Fla., for Stephen Segall.

Michael Brodsky, Miami, Fla., for Richard Gyland.

Nathan Diamond, Miami, Fla., for Andrew Kniffin.

Clark Mervis, Miami, Fla., for Richard Kniffin.

William DeCarlis, Gainesville, Fla., for James Ellis.

Bruce Alter, Miami, Fla., for Wanda Luck.

Robert Gross, Miami, Fla., for Beth Koehler.

## ORDER ON MOTIONS TO SUPPRESS (PASSPORTS)

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Motions to Suppress Evidence filed by Defendants ANDREW KNIFFIN and BETH KOEHLER in the above-styled action. The Motions herein referred to were filed in objection to evidence seized without a search warrant by agents of the Drug Enforcement Administration at the residence of ANDREW KNIFFIN and BETH KOEHLER on March 8, 1984, immediately pursuant to the arrest of these two Defendants. The Government conceded at an evidentiary hearing held on August 15, 1984, that it could not make a sufficient showing to establish that the evidence had been lawfully seized pursuant to the "plain view" exception to the warrant requirement. Consequently, the Government has stipulated that it will not offer any of the evidence thereby seized, except for the passports of the two Defendants named hereinabove. The Government has sought to introduce the passports into evidence, and the Court has received memoranda of law from the Government and the Defendants with respect to the admissibility of the passports.

THE COURT having considered the Motions and all legal memoranda submitted by counsel, the relevant portions of the record, the law, and having been otherwise advised in the premises, it is thereupon

ORDERED AND ADJUDGED as follows:

1. With respect to all evidence *other* than the passports, the Motions to Suppress are hereby GRANTED, as previously announced by this Court verbally and in a

previous ORDER entered on August 21, 1984.

2. The Fourth Amendment basis for the Motions to Suppress appears valid and the Motions to Suppress of ANDREW KNIFFIN and BETH KOEHLER are hereby GRANTED on that basis. However, for the reasons announced hereinbelow, the passports are deemed ADMISSIBLE as evidence in the Government's case-in-chief.

■ 3. A passport is, at all times, the property of the United States Government. 22 C.F.R. § 51.9 states, in pertinent part: "A passport shall at all times remain the property of the United States government and shall be returned to the government upon demand." On this basis, this Court found in a 1982 case that a grand jury could subpoena a passport without infringing the Fifth Amendment rights against self-incrimination of the person compelled to produce the document. *In re Grand Jury Subpoena Duces Tecum (Passports) Dated June 8, 1982)*, 544 F.Supp. 721 (S.D. Fla.1982). Because the passports remain government property, a Defendant has no reasonable expectation of privacy in them. *See generally Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As noted by Justice Harlan in *Katz, id.* at 361, 88 S.Ct. at (Harlan, J., concurring), an expectation of privacy must be "one that society is prepared to recognize as reasonable." Where the Government in essence *owns* the passports, and had the right to subpoena them at any time, society is *not* prepared to recognize a privacy interest in the passports. *Cf. Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946) (noting, in distinguishing between private property and public documents, that at common law a rightful claim of ownership would justify even a trespass by the owner to regain possession). In similar respects, business papers which the law requires a person to maintain do not create or allow for an expectation of privacy by the persons that keep those records. In *In re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir.1979), the Fifth Circuit noted, in a case involving a subpoena for customshouse documents required to be kept in the course of a customshouse broker's business:

> "The proper designation by the government of certain records to be kept by an individual necessarily implies an obligation to produce them ... These obligations to keep and produce records are in a sense consented to as a condition of being able to carry on the regulated activity involved."

*Id.* at 171.

The obligation to produce a passport is of no less significance than that to produce a required set of business records. With regard to the issue of a defendant's expectation of privacy in such records, the law has been succinctly stated by District Judge Melton:

> "Clearly, the same books and papers which the defendant seeks to suppress, if presently in his possession, would have to be released to the proper authorities. The defendant cannot claim a legitimate expectation of privacy in these documents. *See In Re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir.1979). The Court believes the circumstances herein presented do not provide cause for applying the exclusionary rule and keeping relevant and reliable evidence from the trier of fact. *See Rakas v. Illinois*, 439 U.S. 128, 137, 99 Sup.Ct. 421, 427, 58 L.Ed. 387 (1978)."

*United States v. McCoy*, 492 F.Supp. 540, 544 (M.D.Fla.1980).

■ On the aforegoing basis, the Defendants ANDREW KNIFFIN and BETH KOEHLER do *not* have standing, e.g., these Defendants do not have a legitimate expectation of privacy in the passports, as would make application of the exclusionary rule to the passports appropriate. The Court hereby explicitly so concludes. *See also United States v. Falley*, 489 F.2d 33 (2d Cir.1973) (affirming that part of Judge Weinstein's order finding the defendants in contempt of court for failing to turn over

their passports pursuant to a subpoena, in that the passports, "as a matter of statutory declaration, [were] publicly owned.").

■ 4. SEPARATELY AND ALTERNATIVELY to the above ¶ 3, the Court finds that even assuming, *arguendo*, that the Defendants ANDREW KNIFFIN and BETH KOEHLER have standing to contest the admissibility of the passports, the fact that the passports are public and at all times the property of the United States Government establishes implied consent on the part of Defendants to the surrender or use of the passports by the Government. This is because a passport confers certain obligations, as well as rights, on any party to whom the privilege of a passport is bestowed. A passport is "a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 540 (1981) (and citations therein) (cited by this Court in *In Re Grand Jury Subpoena Duces Tecum, etc., supra* at 725). Just as the maintenance of business records for government inspection affords certain persons the opportunity of engaging in those regulated businesses, so the right of the Government to *subpoena* or recall a passport serves as the *quid pro quo* for a person's right to travel outside this country and to be recognized as a citizen of America. *See Haig v. Agee, supra* at 101 S.Ct. 2774 (citation omitted). Moreover, a person who travels outside the country or who seeks readmission to the United States must frequently reveal the contents of his or her passport with the full knowledge that this or other Governments are free to peruse the passport's contents and to make any records such Government or agency of such Government might deem appropriate. In this sense, therefore, a person who has applied for, received and used a passport has implicitly consented to revealing its contents to the Government at any time.

■ 5. Finally, as a completely separate and independent basis for admission of the passports in evidence, the Court takes note of the recent Supreme Court decision in *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), which provides for an exception to the exclusionary rule for evidence, discovered in violation of the Constitution, which would have been ultimately or inevitably discovered by other means. Although *Nix* is a case involving the Sixth Amendment right to counsel, the Supreme Court explicitly noted that the "vast majority" of all courts, including every Federal Court of Appeals having jurisdiction over criminal matters, has endorsed the inevitable discovery doctrine. *Id.* at 104 S.Ct. 2507 & n. 2. The inevitable discovery exception clearly applies in the Fourth Amendment context, and the Eleventh Circuit has so held. *United States v. Roper*, 681 F.2d 1354, 1358 (11th Cir.1982). In fact, this Circuit has gone farther than merely finding admissible such evidence as would have been "inevitably" discovered; rather, evidence has been held admissible if there is a "reasonable probability" that the evidence would have been discovered by legal means. *Id.* at 1358, *citing United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980). In the case *sub judice*, the passports unquestionably would have been discovered in the normal course of investigating this case under either the "reasonable probability" standard or under the stricter "ultimately or inevitably" standard. Under the law and policies discussed hereinabove with respect to the "public" nature of passports and the Government's right to demand their return at any time, the Government certainly would have made such a demand or issued a subpoena for the passports in the investigation of this case, which involves more than one alleged instance of foreign travel by one or more Defendants. Moreover, the Defendants ANDREW KNIFFIN and BETH KOEHLER were arrested just prior to this unconstitutional search, and therefore, *a fortiori*, nothing in the passports was required by the Government in order to obtain the arrest warrants or make the arrests of these Defendants. Thus, as a separate and independent ground for admitting the passports into evidence, this Court has con-

sidered the inevitable discovery exception to the exclusionary rule. No hearing was held on this matter because the exception applies in this case as a matter of law, and further because, on the basis of the aforegoing discussion, a decision on the applicability of this exception is not necessary in order to sustain the admissibility of the passports.

6. This Court announced its rulings on the aforementioned motions in open Court on Monday, August 21, 1984. This ORDER is intended to supplement the Court's verbal rulings.