**The PEOPLE of the State of Colorado, Complainant,**

v.

**Larry Dean BROWN, Attorney–Respondent.**

**No. 92SA211.**

Supreme Court of Colorado, En Banc.

Dec. 1, 1992.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Kenneth A.B. Roberts, Jr., Denver, for respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee approved the findings of a hearing board that the respondent in this attorney discipline proceeding violated the Code of Professional Responsibility by engaging in conduct prejudicial to the administration of justice and by charging an illegal or clearly excessive fee. The hearing panel also approved the board's recommendation that the respondent receive a public censure and be assessed the costs of the proceeding. The respondent has filed exceptions to the hearing panel's report. We accept the panel's recommendation.

I

The respondent was admitted to the bar of this court on May 26, 1988, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The complaint filed by the assistant disciplinary counsel charged the respondent with violating DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and DR 2-106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee). After listening to testimony from the complainant's and respondent's witnesses, including testimony from the respondent and his expert, and after considering the exhibits introduced into evidence, the hearing board found that the following facts had been established by clear and convincing evidence.

II

In September of 1989, John Allen Bellegante signed a fee agreement with the respondent. Pursuant to the agreement, the respondent was to provide "[a]dvice on motions and pleadings for dissolution of marriage and general business advice concerning company matters and personal garnishments." The client, Bellegante, did not ask the respondent for advice concerning judgments obtained against him by his parents, nor did he ask the respondent for advice concerning financial transactions with his parents. Bellegante entered into a second agreement with the respondent in March 1990, in which the respondent's law firm agreed to perform legal services relating to Bellegante's dissolution of marriage proceeding. The respondent and the respondent's associate, Kimberly Ruback, thereafter represented Bellegante in the dissolution of marriage proceeding.

Bellegante's parents were named as parties to the dissolution proceeding with respect to certain loans and business dealings involving their son, but they were never served. On July 24, 1990, Bellegante's mother and his parents' lawyer, Shirley Malach, brought Ruback originals and copies of documents belonging to the parents. The documents included deeds, bank statements, promissory notes, checkbook registers, stock certificates, car titles, worksheets, and index cards. The documents were delivered to Ruback for purpose of adequately establishing Bellegante's debts to his parents and to protect the parents' property interests. Although Ruback was not prepared to meet with Malach on that date, Malach left some of the documents belonging to the parents. Ruback agreed to return the documents the following day. Relying on Ruback's agreement, Malach did not compile a list of the documents left behind nor did she request a receipt for the documents. Ruback did not return the documents the next day.

Two days later, Malach and Bellegante's mother met Ruback in court where the dissolution proceeding was in progress. Malach brought the remainder of the parents' documents and offered them to Ruback for use as exhibits during the trial. Because Ruback promised to return the documents when the court proceedings were concluded, Malach did not compile a list or ask for a receipt for the documents.

None of the documents that Malach gave to Ruback belonged to the respondent's client. All of the documents were the property of the client's parents or were administrative records belonging to Malach.

Upon the conclusion of the trial, the respondent refused to return any of the documents. The respondent stated that he was asserting a retaining lien on the documents pursuant to section 12–5–120, 5A C.R.S. (1991), for unpaid attorney's fees allegedly owed by Bellegante. When the respondent refused to return the documents, he informed Malach that he did not care who the documents belonged to, and stated that they would not be returned until Bellegante's fees were paid. The respondent did not state that he was withholding the documents in order to protect Bellegante's interests.

On August 3, 1990, Bellegante's mother wrote a letter for her son which he signed. In the letter, Bellegante requested the respondent to return documents that he provided to the respondent and also to return the documents delivered by his parents. Accompanied by a police officer, Bellegante's parents went to the respondent's office on the same day, presented the respondent with the letter, and again asked him to return their documents. The respondent told them that no documents would be returned until he was paid.

In a letter to Bellegante written at the parents' request, the respondent stated that the documents would be withheld until the legal bill was paid in full or there was a substitution of "other acceptable security." In the letter, the respondent referred to paragraph 5 of the September 12, 1989, fee agreement, which states in part that, "Client grants to the [respondent's law offices] a lien and security interest in all work done for Client, suits filed and the proceeds thereof until the [law offices] is paid in full." The respondent did not state, however, that the documents were being retained in order to protect Bellegante's financial interests.

On November 14, 1990, the respondent moved to withdraw from the dissolution matter, and the motion was granted. On December 5, 1990, he billed Bellegante approximately $2,100 in attorney's fees and costs for responding to this grievance proceeding. The complaining witnesses in this proceeding are Malach and Bellegante's mother. The respondent later "waived" the fees and costs pertaining to the grievance. Finally, in May 1991, the respondent delivered a box to Bellegante which contained most of the documents belonging to Bellegante's parents.

### III

■ The respondent contends that his assertion of a retaining lien over the documents belonging to Bellegante's parents was authorized by section 12–5–120, 5A C.R.S. (1991), which provides in part:

> **Other property to which lien attaches.** An attorney has a lien for a general balance of compensation *upon any papers of his client* which have come into his possession in the course of his professional employment and upon money due to his client in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

(Emphasis added.) The respondent asserts that the statutory retaining lien is broad enough to encompass papers belonging to third parties which come into the possession of the attorney during the course of professional employment.

There is no common law right to an attorney's lien in Colorado. *See Fillmore v. Wells*, 10 Colo. 228, 230–31, 15 P. 343, 344 (1887). The are only two kinds of attorney's liens in this state and both are statutory: the "retaining lien" and the "charging lien." *People v. Smith*, 830 P.2d 1003, 1005 (Colo.1992); *In re Estate of Benney*, 790 P.2d 319, 322 (Colo.1990). The charging lien is created by section 12–5–119, 5A C.R.S. (1991), "and grants an attorney a lien on claims or choses in action ... on any judgment that the attorney obtained or assisted in obtaining in favor of the client, and on any legal claim filed by the attorney for fees due from the client." *Estate of Benney*, 790 P.2d at 322. The

retaining lien "gives the attorney the right to retain the client's papers until the general balance due for legal services is paid to the attorney...." *Id.*

■■■■ Whether or not the retaining lien is broad enough to reach papers that come into the attorney's possession during the course of the professional relationship but that do not belong to the client or to the attorney, it is settled that the attorney's right to the lien may be waived or lost. *People ex rel. MacFarlane v. Harthun,* 195 Colo. 38, 42, 581 P.2d 716, 718 (1978); *In re Marriage of Rosenberg,* 690 P.2d 1293, 1295 (Colo.App.1984). On each of the occasions that Malach delivered the documents, the respondent's associate, Ruback, agreed to return them in a short period of time.[1] We hold that Ruback's unconditional assurances that the documents would be returned constituted an express waiver of any retaining lien that the respondent might have had in the documents.[2] We conclude, as did the hearing board, that the respondent's refusal to return the documents and his assertion of the retaining lien violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice). *See Smith,* 830 P.2d at 1005 (lawyer's unauthorized recordation of charging lien and subsequent failure to release the lien violated DR 1–102(A)(5)); *see generally* Thomas G. Fischer, Annotation, *Attorney's Assertion of Retaining Lien as Violation of Ethical Code or Rules Governing Professional Conduct,* 69 A.L.R.4th 974 (1989 & Supp. 1992).

The respondent also maintained before the hearing board that it was necessary for him to withhold the documents to protect the financial interests of his client. The respondent argued that because most of the documents concerned financial transactions between the client and his parents, who were judgment creditors of the client, the respondent had an independent ethical duty to protect the client's interests regardless of the client's wishes. The respondent did not assert this theory, however, until after the institution of these grievance proceedings. Whatever the merits of this astonishing argument, the record supports the board's conclusion that the respondent's testimony with respect to this additional "ethical" reason for withholding the

---

1. The respondent asserts that the evidence before the hearing was insufficient for the board to find that Ruback had promised to return the parents' documents. The respondent has submitted to this court only a partial transcript of the proceedings before the board, however, and in the absence of a full record of the proceedings we cannot conclude that the board's finding that there were such agreements is clearly erroneous. *People v. Genchi,* 824 P.2d 815, 817 (Colo.1992).

2. We thus find it unnecessary to delineate the precise scope of the retaining lien or to determine which items coming into an attorney's possession are not subject to the lien. In addition, because we hold that any retaining lien was waived, we do not address the respondent's contention that the hearing board erroneously ignored the testimony proffered by his expert witness on the scope of the retaining lien.

We point out that § 12–5–120 speaks of "papers of [the lawyer's] client which have come into [the lawyer's] possession in the course of his professional employment...." At least one court, in construing similar language in a retaining lien statute, has held that papers that do not belong to the client are not subject to the lien. *Mott v. Guardian Bldg. & Loan Ass'n,* 140 Or. 489, 14 P.2d 447, 452 (1932). We acknowl-

edge, however, that in a few cases that did not turn on the scope of the retaining lien we have used language to describe the lien that was broader than the statutory language. *E.g., Collins v. Thuringer,* 92 Colo. 433, 437, 21 P.2d 709, 710 (1933); *see also Jenkins v. Weinshienk,* 670 F.2d 915, 919 (10th Cir.1982) (quoting language from *Collins* ).

We also note that some courts have stated that under certain circumstances papers, property, and funds that are delivered to an attorney for a special purpose cannot constitute the subject matter of a retaining lien. *See National Sales & Serv. Co. v. Superior Court,* 136 Ariz. 544, 667 P.2d 738, 740 (1983) (stating in dicta that attorney's assertion of retaining lien on book, document, or other chattel which client has delivered to attorney to use as exhibit at trial would be inconsistent with attorney's duties to client); *Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n v. Nadler,* 445 N.W.2d 358, 361 (Iowa 1989); *see generally* Thomas G. Fischer, Annotation, *Attorney's Retaining Lien: What Items of Client's Property or Funds Are Not Subject to Lien,* 70 A.L.R.4th 827 (1989 & Supp. 1992); Restatement of Security § 62 cmt. i (1941) (attorney's retaining lien does not exist where the papers or other chattels are delivered to attorney for specific purpose inconsistent with the lien).

documents was not credible. The respondent's testimony itself therefore violated DR 1–102(A)(5).

## IV

The respondent asserted that he was justified in billing the client for the costs of defending the grievance because of his "independent duty" to protect the client. The hearing board rejected this contention on a number of grounds. First, there was no agreement between the respondent and Bellegante to justify such a billing. Second, since the board found that the respondent's testimony that he withheld the documents to protect his client was false, the basis for the fee was deceptive and dishonest.

The duty to respond to disciplinary matters is a duty personal to the attorney involved. There might be unusual and extraordinary circumstances which would allow an attorney to bill a client pursuant to a fee agreement for the legal costs incurred by the attorney in defending against unfounded disciplinary charges brought by a third party. In this case, however, the disciplinary charges were not unfounded and there was no prior agreement between the respondent and Bellegante to pay such legal costs. Under these circumstances, we conclude as did the hearing board that the respondent's conduct violated DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee).

## V

The hearing panel approved the board's recommendation that the respondent receive a public censure. The assistant disciplinary counsel has not excepted to that recommendation. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, public censure is generally warranted "when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards* 7.3.

In aggravation, the respondent acted from a selfish or dishonest motive, *id.* at 9.22(b); there are multiple offenses, *id.* at 9.22(d); the board found that part of the respondent's testimony was not credible, *id.* at 9.22(f); and the respondent has refused to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g). On the other hand, in mitigation, the respondent has no prior disciplinary record, *id.* at 9.32(a); and is relatively inexperienced in the practice of law, *id.* at 9.32(f). Given the premise that this incident may prove an isolated act of professional misconduct on the respondent's part, we conclude that a public censure is appropriate. Accordingly, we accept the hearing panel's recommendation.

## VI

It is hereby ordered that Larry Dean Brown be publicly censured and that he pay the costs of this proceeding in the amount of $1,985.32 within sixty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.