2013 CO 27

**In the MATTER OF ATTORNEY G.**

**Supreme Court Case No. 11SA239**

Supreme Court of Colorado.

April 22, 2013

Attorney for Complainant: Office of the Attorney Regulation Counsel, Elizabeth Espinosa Krupa, Assistant Regulation Counsel, Denver, Colorado

Attorney for Respondent: Attorney G, Pro Se, Denver, Colorado

JUSTICE EID delivered the Opinion of the Court.

¶ 1 In this attorney discipline proceeding, the Office of Attorney Regulation Counsel (hereinafter "the People") challenges the decision and order of the Hearing Board dismissing the People's complaint against Attorney G.[1] Attorney G represented Jose–Luis Rodriguez in an immigration matter. Rodriguez's wife, Marcelle Nunez, guaranteed Attorney G's payment. During the representation, Attorney G obtained Nunez's United States passport. When Nunez and Rodriguez terminated their relationship with Attorney G and refused to pay him the remainder of his fees, Attorney G asserted a retaining lien over Nunez's passport. The People brought a complaint against Attorney G asserting various ethical violations stemming from the retention of the passport.

¶ 2 In a 2–1 decision, the majority of the Board concluded that the People failed to meet their burden to show that Attorney G committed ethical violations in asserting a retaining lien over the passport, and dismissed the complaint. The Board relied upon section 12–5–120, C.R.S. (2012), which permits an attorney to place a lien on the "papers of [the attorney's] client." First, the Board determined that Nunez was a client of Attorney G. Next, the Board turned to the question of whether it was ethical to assert a retaining lien on a United States passport. The Board observed that it did "not endorse [Attorney G's] decision to place a retaining lien on Nunez's passport" and in fact "consider[ed] his conduct to be unwise and unsympathetic." However, the Board concluded that it could not deem the conduct illegal or unethical, based on its perception that case law in the area was "scant" and "unsettled." Accordingly, it dismissed the complaint. The dissenting member of the Board would have found that the People had met their burden. The People now challenge the Board's order.

¶ 3 We need not address the People's first contention—namely, that the Board clearly erred in concluding that Nunez was Attorney G's client for purposes of section 12–5–120—because, assuming she was, the statute does not authorize an attorney to assert a lien on a United States passport. We thus conclude there is no "other law" under Colo. RPC 1.16(d) that would permit Attorney G to withhold Nunez's passport pending payment for legal services rendered. Accordingly, although we do not disturb the Board's order of dismissal, we disapprove of its rationale.

I.

¶ 4 In May 2009 Attorney G met with Marcelle Nunez, at her request, to discuss her husband's detention by United States Immigration and Customs Enforcement. Her husband, Jose–Luis Rodriguez, a Mexican citizen, faced the prospect of deportation or removal. During that meeting, Attorney G described his proposed legal strategy, and he and Nunez reviewed a copy of his "Stan-

---

1. We identify the respondent attorney by a single letter in cases in which we do not impose discipline or where the disciplinary action is still pending. *See In re Attorney F,* 2012 CO 57, ¶ 1 n. 1, 285 P.3d 322, 322 n. 1

dard Hourly Legal Services and Expenses Agreement."

¶ 5 The agreement primarily addressed the attorney–client relationship. Under the agreement, the client was obligated to provide a $2,000 deposit and to pay Attorney G $250 an hour, up to a fee cap of $8,000. After Attorney G earned the $2,000 deposit, his fees were to be paid by $500 monthly payments until the fee cap was reached. Appeals, if required, were not subject to the agreement. The agreement stipulated that the "[c]lient agree[d] ... that [Attorney G] may assert his rights under Sec. 12–5–119 and 12–5–120, C.R.S.," Colorado's charging lien and retaining lien statutes.

¶ 6 Attorney G provided Nunez with a copy of the agreement to review on her own. He informed her that in order to retain his services, she was required to sign the agreement as "Guarantor" and return the agreement to him with the $2,000 deposit. Nunez returned a week later with the deposit and the signed agreement. Several weeks later, Attorney G met with Rodriguez, reviewed the agreement with him, and obtained his signature as "Client."

¶ 7 By early July, Attorney G had met the $8,000 fee cap. Around that time, Attorney G requested that Nunez, a United States citizen, obtain a United States passport in order to prepare an I–246 application for a stay of Rodriguez's deportation or removal.[2] In the event that Attorney G did not prevail in Rodriguez's withholding-of-deportation application, Attorney G would file the stay so that Rodriguez was not deported or removed before a decision in his appeal. Nunez obtained the passport and gave it to Attorney G. During the course of Attorney G's repre-

sentation of Rodriguez, Attorney G also represented Nunez in a pair of matters unrelated to the immigration case.[3]

¶ 8 Nunez continued to pay Attorney G's legal bills through December 2009, paying an aggregate of $5,000 in fees and $155 in costs. On December 16, 2009, Attorney G participated in a hearing on the withholding-of-deportation application, where the immigration court denied Rodriguez's application. Attorney G wrote to Nunez describing his frustration with the ruling and stating that, if Nunez and Rodriguez desired, he would appeal the ruling. However, Attorney G reminded them that an appeal was not subject to the $8,000 fee cap; thus, in order to appeal, they would need to enter into a new fee agreement.

¶ 9 Nunez and Rodriguez chose not to appeal. After the withholding-of-deportation application was denied, Rodriguez was deported, and Nunez and Rodriguez stopped making their $500 monthly payments. $3,000 remained unpaid. Nunez then asked Attorney G to return her passport so that she could, among other things, visit her husband in Mexico. Attorney G refused, stating that he would not return her passport until the outstanding fee balance was paid.

¶ 10 The People brought this action claiming that Attorney G's retention of Nunez's passport violated Colo. RPC 1.15(b) and 1.16(d).[4] The Board turned to·section 12–5–120, which provides that "[a]n attorney has a lien for a general balance of compensation upon *any papers of his client* which have come into his possession in the course of his professional employment." (Emphasis added). First, the Board ruled that, under the

---

2. That application requires "[c]urrent and valid passport(s) ... for you and your family (copies not acceptable)."

3. No fee agreement was signed for these matters nor does it appear from the record that this work was related to Rodriguez's immigration case. Attorney G assisted Nunez in efforts to find alternative housing away from her in-laws and to repossess her vehicle after a private sale. The Hearing Board also made note of an incident when Nunez described Attorney G as "her attorney" to an employee at the Center for Work Education and Employment.

4. Colo. RPC 1.15(b) provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall ... deliver to the client or third person any funds or other property that the client or third person is entitled to receive." Colo. RPC 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as ... surrendering papers and property to which the client is entitled.... The lawyer may retain papers relating to the client to the extent permitted by other law." The People also alleged other ethical violations not relevant to this proceeding.

statute, Nunez was Attorney G's client. "[Attorney G's] records are peppered with intimations not only that [Attorney G] and Nunez believed they had formed an attorney-client relationship in the immigration case, but also that Nunez sought and received [Attorney G's] advice and assistance in at least two other unrelated matters." Second, while opining that "the law in this sphere is unsettled" and "scant," the Board concluded that the People failed to show that Attorney G "lacked a colorable claim under Colorado law to assert a retaining lien" and "failed to prove the lien was legally impermissible." The Board thus found that the People failed to meet their burden to show that Attorney G violated Colo. RPC 1.15(b) or 1.16(d), and dismissed the complaint. The Board added that although it did not find a rule violation, it did "not endorse [Attorney G's] decision to place a retaining lien on Nunez's passport," which it considered "to be unwise and unsympathetic." The People now challenge the Board's order.

¶ 11 We need not consider the People's first contention—namely, that the Board clearly erred in concluding that Nunez was Attorney G's client for purposes of section 12–5–120—because assuming she was, the statute does not authorize an attorney to assert a lien on a United States passport. Therefore, there is no "other law" under Colo. RPC 1.16(d) that would permit Attorney G to withhold Nunez's passport pending payment for legal services rendered. Accordingly, although we do not disturb the Board's order of dismissal, we disapprove of its rationale.

## II.

¶ 12 First, we address our jurisdiction to hear this case. Attorney G argues that we have no jurisdiction to review the Board's dismissal of a complaint. He relies upon C.R.C.P. 251.27(a), which provides that "[a]ppellate review by the Supreme Court of every final decision of the Board in which public censure, a period of suspension, disbarment, or transfer to disability inactive status is ordered or in which reinstatement or readmission is denied shall be allowed as provided by these rules." He argues that

because none of the enumerated actions were ordered against him—in other words, because the complaint against him was dismissed—this court lacks jurisdiction over the People's challenge.

¶ 13 We agree with Attorney G that C.R.C.P. 251.27(a) does not provide *a right to appeal from* the dismissal of a complaint. However, C.R.C.P. 251.27(a) is not the sole basis of this court's jurisdiction in the area of attorney discipline.

¶ 14 C.R.C.P. 251.1(d) states that "[t]he Supreme Court reserves the authority to review any determination made in the course of a disciplinary proceeding and to enter any order with respect thereto." Under C.R.C.P. 251.1(d), we possess "plenary authority in matters involving attorney regulation." *In re Rosen*, 198 P.3d 116, 119 (Colo. 2008). The Board's decision in this case raises an important question of law—namely, whether section 12–5–120 authorizes an attorney to assert a retaining lien on a United States passport. Because of the question's importance, we invoke our plenary authority to address it.

## III.

¶ 15 Colo. RPC 1.16(d) provides that "[u]pon termination of representation, [an attorney] shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled." However, an attorney "may retain papers relating to the client to the extent permitted *by other law.*" *Id.* (emphasis added). The question here is whether Attorney G was permitted by "other law" to assert a retaining lien on Nunez's passport.

¶ 16 The only "other law" at issue in this case is section 12–5–120, which has remained unchanged since 1903. That section provides that an attorney may assert a lien "for a general balance of compensation *upon any papers of his client* which have come into his possession in the course of his professional employment." (Emphasis added). Section 12–5–120 permits an attorney to assert a "retaining or possessory" interest in a client's papers until she has been paid

for work performed on the client's behalf. *Jenkins v. Dist. Court*, 676 P.2d 1201, 1204 (Colo.1984); *accord In re Estate of Benney*, 790 P.2d 319, 322 (Colo.1990); *see also* 2 *Attorneys' Fees* § 12:4 (3d ed. 2012) (explaining that "[t]he purpose of the attorney's retaining lien is to aid the attorney in recovering the fees and costs due him for the services he has performed for his client"). No common law right to a retaining lien exists in Colorado. *People v. Brown*, 840 P.2d 1085, 1087 (Colo.1992). Instead, retaining liens are statutory constructs, *id.*, and, "[t]herefore, strict compliance with [section 12–5–120] is required," *People v. Gray*, 35 P.3d 611, 618 (Colo.O.P.D.J.2001).

▌ ¶ 17 The People argue that the Board clearly erred in concluding that Nunez was Attorney G's client for purposes of section 12–5–120. We need not decide that issue, however, because even if we were to assume an attorney-client relationship, section 12–5–120 does not authorize an attorney to assert a lien on a United States passport.

¶ 18 We have defined a client's "papers" for purposes of section 12–5–120 to include "all books, papers, securities and money coming into an attorney's possession in the course of his professional employment." *Jenkins*, 676 P.2d at 1203–04 (citing *Collins v. Thuringer*, 92 Colo. 433, 437, 21 P.2d 709, 710 (1933)). A United States passport, as an essential identifying document,[5] would, at first glance, fall within this broad definition. However, we must read section 12–5–120 in conjunction with federal law governing the nature of United States passports in order to determine whether a passport is the type of client "paper" on which a retaining lien may be asserted.

▌ ¶ 19 Congress has authorized the Secretary of State to grant and issue United States passports. 22 U.S.C. § 211a (2012). Under federal regulation, "[a] passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand." 22 C.F.R.

§ 51.7(a) (2012).[6] A number of federal courts have affirmed that a passport is government property. *See, e.g., United States v. Falley*, 489 F.2d 33, 41 (2d Cir.1973) (citing federal regulations for the same proposition); *Lynd v. Rusk*, 389 F.2d 940, 948 (D.C.Cir. 1967) (finding that a United States passport is "an official document that has consistently been regarded as the property of the [U.S.] Government"); *United States v. Segall*, 589 F.Supp. 856, 858 (S.D.Fla.1984) ("A passport is, at all times, the property of the United States Government."). While the Supreme Court has stated that United States citizens have a liberty interest in their passports, *see Haig v. Agee*, 453 U.S. 280, 293, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (explaining that citizens have a liberty interest to travel abroad and cannot do so, pursuant to statute, without a passport), ultimate ownership of passports resides with the United States government.

¶ 20 We find nothing in section 12–5–120 that would permit an attorney to assert a possessory, or retaining, interest in a United States passport in order to assure payment for legal services. A possessory lien is a "right to hold a thing" until payment is made. *Wenz v. McBride*, 20 Colo. 195, 197, 36 P. 1105, 1106 (1894) (involving an alleged possessory lien on a quantity of brick). Here, Attorney G had no "right to hold" Nunez's passport. Not only is a United States passport the property of the federal government, it must be surrendered upon demand. Thus, an attorney's retaining lien is inconsistent not only with the type of property involved, it is also inconsistent with the type of control the United States government asserts over the property. *See id.* at 198, 36 P. at 1106 (holding that a possessory lien is not available where putative lienholder's right to the property was "qualified and mixed"). In sum, a United States passport is a sui generis type of federal property that does not fall within a client's "papers" on which a retain-

---

5. *See Haig v. Agee*, 453 U.S. 280, 293, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981).

6. Attorney G argues that the People cannot rely upon 22 C.F.R. § 51.7(a) because the regulation was not raised below. We disagree. In their

complaint, the People alleged that Attorney G violated Rule 1.16(d) because "[a] United States passport is at all times the property of the United States and cannot be part of a retaining lien."

ing lien may be asserted under section 12–5–120.

¶ 21 We are aware of only two cases in which a court considered whether an attorney could assert a retaining lien over a passport. Both cases concluded that the attorneys could not assert retaining liens on their clients' passports, and, in both cases, the attorneys were ordered to return the passports. *See United States v. Bakhtiar*, No. 91 CR. 782, 1997 WL 573408, at *1 (S.D.N.Y. 1997); *Bonner v. Goonewardene*, 9 Misc.3d 1059, 800 N.Y.S.2d 821, 823, 825 (N.Y.Civ.Ct. 2005). Both courts recognized that retaining liens on passports were inconsistent with federal policy regarding passports. For example, in *Bakhtiar*, the court concluded that the attorney usurped a "high policy of the United States" that permitted an Iranian citizen to leave the country, concluding that "an attorney's lien which frustrates that purpose must give way." 1997 WL 573408, at *1. Similarly, in *Bonner*, the court observed that permitting an attorney to assert a lien on a Sri Lankan passport "allows an individual to act as the equivalent of a government." *Bonner*, 800 N.Y.S.2d at 823. *Bonner* went one step further and declared the practice unethical. *Id.*; *but see Bakhtiar*, 1997 WL 573408, at *1 (finding "nothing unethical or shocking" with the idea of retaining a passport as a security device to coerce payment of legal fees).

¶ 22 *Bonner's* holding has been widely accepted; it is cited approvingly for the proposition that an attorney may not hold a client's passport pursuant to a retaining lien. *See ABA/BNA Lawyers' Manual on Prof'l Conduct* ch. 41, § 112; 7 Am. Jur. 2d *Attorneys at Law* § 313; 7 N.Y. Jur. 2d *Attorneys at Law* § 281; 1B Carmody–Wait 2d *New York Practice with Forms* § 3:548. No contrary authority has been cited to us, and we have found none.

¶ 23 Applied here, *Bonner's* reasoning would suggest that Attorney G acted "as the equivalent" of the federal government when he asserted a retaining lien over Nunez's passport. Section 12–5–120 cannot be read to permit the assertion of such a lien. We therefore conclude that section 12–5–120 does not authorize an attorney to assert a retaining lien over a United States passport.[7]

¶ 24 Because we conclude that section 12–5–120 does not authorize an attorney to assert a retaining lien on a client's United States passport, there is no "other law" under Colo. RPC 1.16(d) that would permit Attorney G to withhold Nunez's passport pending the payment for legal services rendered.[8] Accordingly, although we do not disturb the Board's order of dismissal, we disapprove of its rationale.[9]

___

7. Although these authorities do not differentiate between United States and foreign passports, we limit our holding to what is at issue in our case—that is, a United States passport. *See, e.g., Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000) (suggesting that there may be differences in how foreign governments treat the passports they issue).

8. Our conclusion that section 12–5–120 does not authorize an attorney to assert a retaining lien

over a United States passport and that therefore Attorney G was obligated to return Nunez's passport pursuant to Colo. RPC 1.16(d) applies equally to Colo. RPC 1.15(b), which requires an attorney to return to any "client or third person any funds or other property that the client or third person is entitled to receive."

9. We also deny Attorney G's request for attorney's fees and costs.