2013 CO 29

# In the MATTER OF David Jerome GREENE.

## Supreme Court Case No. 12SA71

Supreme Court of Colorado.

May 20, 2013

Office of the Attorney Regulation Counsel, Adam J. Espinosa, Assistant Regulation Counsel, Denver, CO, for Complainant.

Haddon, Morgan and Foreman, P.C., Jeffrey S. Pagliuca, Denver, CO, for Respondent.

JUSTICE COATS delivered the Opinion of the Court.

¶ 1 The Attorney Regulation Counsel sought review of the Presiding Disciplinary Judge's order granting summary judgment in favor of Respondent Greene. The PDJ found that all of the claims in the complaint for attorney discipline should have been joined and adjudicated along with the claims raised in a previous complaint, and therefore they were barred according to the doctrine of claim preclusion.

¶ 2 Because none of the claims alleged in the instant complaint was identical with any claim that had already been finally adjudicat-

ed, the PDJ erred. The order granting summary judgment in favor of the Respondent is therefore vacated, and the case is remanded for further proceedings on the claims as to which summary judgment was ordered.

## I.

¶ 3 On September 2, 2011, after receiving authorization from the Attorney Regulation Committee, as required by C.R.C.P. 251.12, the Office of Attorney Regulation Counsel filed a complaint with the Presiding Disciplinary Judge seeking to establish grounds to discipline David Jerome Greene. The complaint alleged various violations of the Rules of Professional Conduct, including failing to safeguard, and in fact converting, client funds, as well as failing to comply with rules governing the operation of an attorney's COLTAF account and the maintenance and production of accounting records.

¶ 4 In his answer the respondent asserted, among other things, the affirmative defense of res judicata and subsequently moved for summary judgment on that basis. Finding that he had already been disciplined in an earlier proceeding for trust account violations involving the same transaction, or at least the same series of transactions, the PDJ ruled that the claims in the instant complaint were barred, and he granted the respondent's motion. In explaining why he considered there to be no genuine dispute of material fact for purposes of summary judgment, the PDJ summarized the investigations out of which the two complaints arose and compared the ethical violations alleged against the respondent in each.

¶ 5 According to that order, the Office of Attorney Regulation Counsel filed a complaint against the respondent in December 2010, with which a second complaint was consolidated shortly thereafter, ultimately alleging violations of various rules of professional conduct in his representation of four particular clients and including factual representations concerning the mishandling of his COLTAF account between October 2009 and February 2010. That complaint was heard in August 2011 and finally adjudicated by a decision of the Hearing Board in October of that same year. In September 2011, regula-

tion counsel filed the instant complaint, alleging specific misconduct concerning three different and one of the same clients, which misconduct included instances of both knowing and negligent conversion of client funds and other violations of rules governing the operation of an attorney's COLTAF account and the maintenance and production of account records. The PDJ's order considered it significant that a number of the factual representations in the later complaint overlapped in time with allegations in the earlier complaint. The order also recounted in some detail the progress and sequence of these investigations, including the efforts of regulation counsel to depose the respondent and discover his records, and the correspondence and negotiations of the parties.

¶ 6 Acknowledging the dearth of authority, in both this jurisdiction and elsewhere, concerning claim preclusion in the context of attorney discipline matters, the PDJ relied heavily on the Restatement (Second) of Judgments' treatment of the merger of claims and bar to claim splitting, and particularly the Restatement's choice to define a claim in terms of a single transaction or series of connected transactions. In addition to finding some overlap in the time frame within which factual representations were made in each complaint, the PDJ found that the COLTAF allegations of both were substantially of the same sort and similarly motivated; that they formed a convenient trial unit; and that the parties expected them to be consolidated in a single complaint. It ultimately concluded that where the People plead claims for relief in one action "and then create an expectation that later-pled matters of the same ilk will be treated as one convenient trial unit, they should try all such matters together." Rejecting as irrelevant the objection that the Office of Attorney Regulation Counsel lacked a full and fair opportunity to join all of its allegations in a single complaint but finding, in any event, no genuine dispute that the claims pled in the instant action "were premised on facts that were known to the People and thus could have been litigated in the first action," the PDJ found the instant action barred by the doctrine of claim preclu-

sion and ordered summary judgment as the appropriate remedy.

¶ 7 The Office of Attorney Regulation Counsel filed a notice of appeal with this court pursuant to the authority of C.R.C.P. 251.1(b) and 251.27.

## II.

¶ 8 As we have only recently made clear, C.R.C.P. 251.27 authorizes appellate review by this court of no more than final decisions of a Hearing Board resulting in one of the orders specified in the rule. *In re Attorney G*, 2013 CO 27, ¶ 13, 302 P.3d 248. Although an order of the PDJ granting a motion for summary judgment is therefore not authorized by C.R.C.P. 251.27, we have elsewhere expressly reserved to ourselves the authority to review any determination made in the course of disciplinary proceedings and to enter an order directing that further disciplinary proceedings be conducted. *See* C.R.C.P. 251.1(d). Because the applicability of the doctrine of claim preclusion to attorney disciplinary proceedings is not only a matter of first impression in this jurisdiction with potentially far-reaching implications for the practice of the Office of Attorney Regulation Counsel, but also a matter that by its very nature is resistant to review by this court except through the discretionary exercise of its plenary powers, we choose to address it in this case.

¶ 9 Although the process of imposing sanctions for attorney misconduct has much in common with criminal prosecution and has in fact been characterized as "quasi-criminal" in nature, *In re Fisher*, 202 P.3d 1186, 1199 (Colo.2009), we have chosen to follow a largely civil model for the enforcement of attorney discipline. The Rules of Procedure Regarding Attorney Discipline and Disability Proceedings provide for the initiation of disciplinary proceedings by the filing of a complaint, *see* C.R.C.P. 251.14, with all hearings and matters after the filing of a complaint to be conducted in conformity with the Rules of Civil Procedure and civil trial practice in the state. C.R.C.P. 251.18(d). As a court-made doctrine to ensure the finality of judgments, 18 *Moore's Federal Practice* § 131.10[1][a] (3d ed.2012), claim preclusion, or what formerly fell within the rubric of res judicata, *see Pomeroy v. Waitkus*, 183 Colo. 344, 349–50, 517 P.2d 396, 399 (1973), is equally necessary, at least in some fashion and to some degree, to the process of attorney regulation.

¶ 10 In an effort to strike an appropriate balance between the systemic interest of finality and the competing but equally important interest of ensuring litigants a full and fair opportunity to seek redress for their injuries, we have long limited the preclusive effects of the doctrine to the coincidence of four conditions: finality of the earlier judgment, identity of subject matter, identity of claims, and identity of the parties (or at least those in privity with them).[1] *See, e.g., Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005). To the extent causes of action in both earlier and subsequent civil actions are precisely identical—pursuing relief for the same injury, based on the same conduct and theory of recovery—determining that two claims are the same is a relatively uncomplicated task. To the extent, however, the doctrine also serves to prevent claim splitting, the task of assessing whether ostensibly disparate claims should be treated as the same for purposes of a bar to sequential actions against the same party necessarily implicates policy considerations requiring a balancing of various factors, which inevitably vary in significance depending upon the particular facts and particular nature of the claims at issue.

¶ 11 For some four decades this jurisdiction has aligned itself with the modern trend, distinguishing claim preclusion, or "true" res judicata, from collateral estoppel, or mere issue preclusion, *see Waitkus*, 517 P.2d at 399, and similarly, it has aligned itself with the modern trend of treating a single claim broadly for purposes of merger and bar, to include more than merely the same cause of action or theory of recovery. *See, e.g., State*

---

1. Although we have carried over the requirement of "identify of subject matter" from pre-*Pomeroy v. Waitkus* cases, its significance as a separate consideration has diminished with the expansion of our understanding of a single claim. *Cf. Moore's* § 131.01 (indicating the typical federal practice of enumerating only three factors).

*Eng'r v. Smith Cattle, Inc.,* 780 P.2d 546, 549 (Colo.1989) (relying on *Moore's Federal Practice* for the proposition that "[t]he 'same claim or cause of action' requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies"). In fact, we have largely subscribed to the "transactional view" pioneered by the Restatement, defining a single claim so as to embrace all remedial rights of a plaintiff against a defendant growing out of the relevant transaction or series of connected transactions. *See, e.g., Argus,* 109 P.3d at 609 (quoting favorably from Restatement § 24). As the lengthy comment and illustrations of the Restatement make clear, however, its concept of a "transaction, or series of connected transactions" is incapable of mathematical precision and instead contemplates a pragmatic standard, to be applied with attention to the facts of each case. Restatement (Second) of Judgments § 24 cmt. b (1982). Among the considerations relevant to a determination whether particular facts constitute a single claim or multiple claims, the Restatement looks, for example, to their relatedness in time, space, origin, or motivation, and whether they form a convenient unit for trial purposes. *See* Restatement § 24.

¶ 12 Over substantially the same time frame, in the criminal context, this jurisdiction has also aligned itself with the modern trend requiring the joinder in a single prosecution of all acts or series of acts arising from the same criminal episode, a formula providing broader protection against subsequent prosecutions than the "same offense" principle of double jeopardy and its collateral estoppel aspect. *See Jeffrey v. Dist. Court,* 626 P.2d 631, 639 (Colo.1981); *see also* § 18–1–408(2), C.R.S. (2012); Model Penal Code § 1:07 (1985); ABA Standards, Joinder and Severance § 1.3 (Approved Draft 1968). In stark contrast to the absence of case law in this jurisdiction defining a single claim for purposes of attorney regulation, we have extensively parsed the scope of a "criminal episode," and even expressly analogized it to

"its counterpart in the civil law concept of 'transaction.'" *See People v. Miranda,* 754 P.2d 377, 380 (Colo.1988) (referencing both the Restatement and *Ashe v. Swenson,* 397 U.S. 436, 454 n. 8, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennen, J., concurring)).

¶ 13 Working through a variety of different fact patterns, in a lengthy series of cases, *see, e.g., People v. Tulipane,* 192 Colo. 476, 479, 560 P.2d 94, 96 (1977); *Brutcher v. Dist. Court,* 195 Colo. 579, 581, 580 P.2d 396, 398 (1978); *Jeffrey,* 626 P.2d 631; *Corr v. Dist. Court,* 661 P.2d 668 (Colo.1983); *People v. Rogers,* 742 P.2d 912 (Colo.1987); *Miranda,* 754 P.2d at 380, we have distilled a host of considerations to conclude that a criminal episode for purposes of barring subsequent prosecution of a criminal defendant contemplates all those offenses arising either from his same conduct or those offenses connected in such a manner that their prosecution will involve substantially interrelated proof. *Miranda,* 754 P.2d at 380. We have also made clear that in this context, the "same conduct" refers to "a single act or single behavioral incident that results in the commission of more than one offense," *Miranda,* 754 P.2d at 381,[2] and that "[p]roof of different crimes is interrelated if the proof of one crime forms a substantial portion of proof of the other." *Rogers,* 742 P.2d at 918. With regard to the latter in particular, we have reasoned that a determination of the interrelationship of proof properly focuses a trial court's inquiry on the degree to which the defendant is harassed and judicial resources wasted by successive prosecutions, observing that where the proofs of the charges are not interrelated, prejudice to the defendant caused by separate prosecutions will be minimal. *Miranda,* 754 P.2d at 380. We have also implicitly linked this standard with the Restatement's "transactional view" of a single claim by further observing that crimes that are committed simultaneously or in close sequence; crimes that occur in the same or closely related place; and acts that form part of a schematic whole are generally crimes involving interrelated proof. *Id.*

---

**2.** In *Miranda* we suggested that the reckless operation of a motor vehicle resulting in injury or death to two or more persons would be an example of behavior that would constitute the same conduct.

¶ 14 The question whether ostensibly disparate claims should be treated as the same or sufficiently connected transactions for purposes of "merger and bar" ultimately involves a policy choice concerning how best to respect the principle of finality without depriving litigants of a full and fair opportunity to seek redress for their injuries. Notwithstanding the identification of considerations potentially relevant to the mine run of cases, predictability in any particular class of cases depends not only on the unique facts of each case but also on the peculiar nature of those claims and proceedings available to vindicate them. Given the similarities between attorney regulation and criminal prosecution—including proceedings in both contexts brought in the name of the People of the State, for the benefit of the public at large rather than the vindication of individual wrongs; the obligations of the People's attorney in both contexts to present an independent deliberative officer or body with sufficient evidence to proceed, *see* C.R.C.P. 251.12; and a similar threat to liberty, at least with regard to livelihood, posed by the proceedings in both contexts—the concept of a "criminal episode" presents the most compelling analog for meaningfully circumscribing a "transaction or connected series of transactions" of attorney misconduct.

¶ 15 In addition to the unity of a transaction, or criminal episode, the Model Penal Code identifies two additional concerns as integral to any requirement of compulsory joinder in the criminal context: awareness by the prosecutorial authority of additional offenses that should be joined and jurisdiction to prosecute them. Construing our own statutory provisions incorporating these considerations, *see* § 18–1–408, C.R.S. (2012), we have concluded that a rule requiring the joinder of all offenses arising from the same criminal episode, of which the prosecuting authority is aware at a point in time making consolidation or joinder a realistic option, not only adequately protects an accused from unnecessary sequential prosecutions but also safeguards the ethical and diligent prosecutor from technical, arbitrary bans to subsequent prosecution of companion offenses discovered too late to permit consolidation. *See Jeffrey*, 626 P.2d at 638. Because the Attorney Regulation Counsel has jurisdiction over all licensed attorneys in the state, the question of jurisdiction may present less of a concern, but for all of the reasons supporting the "criminal episode" analogy in the first place, a reasonable opportunity for the Office of Attorney Regulation Counsel to become aware of and adequately investigate and join connected transactions is equally important for the process of attorney regulation.

¶ 16 Although there is clearly no disciplinary rule corresponding to the awareness requirement of § 18–1–408(3), and although awareness is not expressly included among the requirements for claim preclusion itself, it is nevertheless generally accepted, even with regard to actions otherwise subject to the doctrine of claim preclusion, that a party's right to have subsequently asserted claims barred may be lost by agreement or acquiescence, or by concealment of connected transactions through fraud or even innocent misrepresentation. *See* Restatement (Second) of Judgments § 26; *Moore's* § 131.24. Despite their similarities, attorney regulation and criminal prosecution differ in at least one very important aspect: in the former, unlike the latter, the cooperation of the respondent attorney is mandated and a failure in this regard may itself be sanctionable misconduct. At the least, therefore, any lack of cooperation by a respondent attorney resulting in regulation counsel's inability to join all charges arising from the same transaction or series of connected transactions must deprive the respondent of his entitlement to assert the bar of claim preclusion.

### III.

¶ 17 Even without our specific guidance concerning attorney regulation, the PDJ attempted to apply the Restatement's broad transactional view by addressing the questions whether the facts upon which the two complaints rested were related in time, space, origin, or motivation, whether they formed a convenient trial unit, and whether their treatment conformed to the expectations of the parties. Without our current guidance, however, the ruling failed to view interrelatedness of proof as the object, or

organizing principle, of these considerations. To the extent the PDJ gave consideration to the interrelatedness of proof at all, he did so only with regard to the question whether both complaints formed a convenient trial unit; and he found the evidence to be much the same for the claims in both complaints only because the COLTAF claims in each could be proved from the subpoenaed bank records of the respondent's COLTAF account and because the same regulation counsel investigator could be used as the presenting witness. He did not consider whether proof of the first complaint would form a substantial portion of the proof of the second. *Cf. Rogers,* 742 P.2d at 918. Ultimately, the order appeared to rest not on whether proof of the first charges would necessarily form a substantial portion of proof of the second, but on the PDJ's determination that it was the expectation of both parties that all of the COLTAF issues would be consolidated in a single case.

¶ 18 Whether or not a number of the PDJ's factual premises concerning lack of cooperation and regulation counsel's ability to join the two complaints were clearly erroneous, however, the complaint in this case itself demonstrates that its only claim relating to a party from the first action was not in any way related to management of the respondent's COLTAF account. Similarly, the second complaint's account-related claims, which included converting funds, failing to deposit professional funds into a business account, comingling of funds, failure to maintain records, and failure to cooperate, all arose from specific acts of the respondent alleged to have been committed in the period from November through December 2010, months after the acts alleged in the first complaint. Furthermore, the acts alleged in the second complaint involved funds related to the representation of different clients altogether.

¶ 19 However improper the respondent's management practices may have been, there is no suggestion that the COLTAF-related acts alleged in both complaints were motivated by a common design or scheme such that proof of each would necessarily be included in proof of the others, and

they were plainly not the "same conduct." Nor would the fact that the trust account issues of both complaints were of the same nature or would "redress essentially the same basic wrong," even if that could fairly be said of this case, suggest anything about the interrelatedness of their proof. Just as violations of the same criminal proscription, violations of the same ethical rule can be committed by the same person without constituting a single transaction or series of transactions, or sharing any interrelatedness of proof. *Cf. Miranda,* 754 P.2d at 378–79, 381 (holding that despite the shared characteristics of distributing cocaine on two separate days, including the nature of the offenses, the persons involved in the incidents, and the circumstances surrounding distribution of the cocaine, they did not constitute the same criminal episode).

¶ 20 In short, it is apparent from the record that there was no substantial interrelationship of proof between the claims asserted in the two complaints. Therefore, whether or not the PDJ erred in rejecting, as a factual matter, the Attorney Regulation Counsel's assertion that his office was deprived of a fair opportunity to join all of its allegations in a single complaint by the respondent's delay, obstruction, and failure to cooperate, none of the violations alleged in the second complaint was committed as part of the same transaction or series of transactions as any claim adjudicated in the first complaint. Joinder with the first complaint was therefore unnecessary, even if reasonably feasible.

### IV.

¶ 21 Because none of the claims alleged in the instant complaint was identical with any claim that had already been finally adjudicated, the PDJ erred. The order granting summary judgment in favor of the Respondent is therefore vacated, and the case is remanded for further proceedings on the claims as to which summary judgment was ordered.

CHIEF JUSTICE BENDER does not participate.