JUSTICE COATS, dissenting.
¶ 69 With its opinion today, the majority overturns the defendant's convictions for attempting to murder two Denver police officers and assaulting a bystander, in a melee in which the defendant concededly fired a shotgun at both the bystanders and the police, endangering at least one of the bystanders and grazing one of the officers, before he was himself wounded and his cousin killed by police fire; and it explains that it does so for the reason that the trial court erred in allowing the jury to hear the full, statutory definition of self-defense. The majority reasons that despite substantially conflicting accounts of the melee, in the crowded parking lot of a club at closing time, involving multiple shots by the police in the wake of shooting by the defendant and at least one other man, all in a matter of seconds, there was no credible evidence from which the jury could have found that the defendant was the initial aggressor in his exchange of gunfire with the police. Because I disagree with the majority's understanding of the law of self-defense in this jurisdiction, as well as a trial court's duty to ensure that the jury is accurately instructed concerning that law, and because I believe today's holding will have a substantially deleterious impact on courts attempting to satisfy that duty, I respectfully dissent.
*1153 ¶ 70 To be perfectly clear, there is no suggestion in the majority opinion (nor could there be) that the jury instructions in any way mischaracterized the law of self-defense or relieved the prosecution of its burden to prove that the defendant's conduct in firing on the police was not legally justified in defense of himself or a third person. In this jurisdiction, one is legally justified in using against another person a degree of physical force, other than deadly physical force, that he reasonably believes to be necessary to defend himself or a third person from what he also reasonably believes to be the use or imminent use of unlawful physical force by that other person, unless he provokes the unlawful physical force with the intent to cause bodily injury or death to the other person or the force involved is the product of an unauthorized combat by agreement. § 18-1-704, C.R.S. (2017). Unlike a number of other jurisdictions, in this jurisdiction he may also do so without first retreating unless he was the initial aggressor, in which case he may only do so if he first withdraws from the encounter and effectively communicates to the other person his intent to do so, but the other person nevertheless continues to use or threaten the use of unlawful physical force. See COLJI-Crim. H:11 (2017); COLJI-Crim. H:11 cmt. 3. The majority reverses simply on the grounds that the jury should never have heard of this qualification on the right to defend without first retreating (which the majority characterizes as an "exception" to the defense but which I would find integral to the definition of the defense itself) because no reasonable juror could have believed that the defendant was the initial aggressor in this scenario.
¶ 71 Especially in a hardly atypical scenario like this, in which multiple parties are involved in a quickly developing, confusing, and deadly melee, I believe the jurors should virtually always be fully instructed on the law governing justification and be permitted to decide for themselves the precise sequence of events and assess as a factual matter the perceptions and motivations of the parties involved. In this case, one of the officers, for shooting at whom the defendant was convicted of attempted murder, actually testified that he returned fire only after being grazed by the defendant's first shotgun blast. Apparently treating both officers as a single person, the majority interprets the testimony at trial as precluding any finding that the defendant was the initial aggressor as to either officer. See maj. op. at ¶ 47 n.7. While I believe such a restrictive interpretation of the evidence usurps the role of the jury, especially on the evidence in this case, the majority's conclusion that the defendant could not have been found the initial aggressor in this scenario does not rest primarily on its understanding of the interactions between the defendant and the officers but rather its understanding of what it means to be an "initial aggressor" within the contemplation of the statute.
¶ 72 While I consider the reversal of both of the defendant's attempted murder convictions to be problematic enough, I believe the really substantial and long-lasting damage of today's holding lies in its interpretation of the statutory term "initial aggressor" as referring to the defendant's role in the broader episode or transaction, rather than his conduct toward the person against whose attack with unlawful force he purports to be defending. Regardless of any threatening behavior toward the police, the majority finds it error to instruct concerning the obligations of an initial aggressor in using physical force against them, on the grounds that there was insufficient evidence that the defendant was the initial aggressor vis-à-vis the third party with whom he was exchanging gunfire when the police arrived. The majority therefore occupies itself largely with the questions whether the entire melee constituted a single episode or incident and who started the fight between the defendant and the third person with whom he was exchanging gunfire.
¶ 73 While a reasonable but mistaken belief that the party against whom he exercises physical force is allied with and assisting someone from whom he is already under unlawful attack might, under some set of circumstances, be relevant to a defendant's justification for using that force, the majority's holding that his obligation to retreat or withdraw before responding is contingent upon evidence that he was the initial aggressor against a third person, merely because *1154 his use of force against both victims could be described as part of a single "episode," lacks support in either logic or the language of the statute. Although the question whether different acts are part of a single episode, or incident, has statutory significance and has long bedeviled us in the context of charging, multiple convictions, and sentencing, see § 18-1-408, C.R.S. (2017); see also In re Greene, 2013 CO 29, ¶¶ 12-13, 302 P.3d 690, 694, we have never suggested that the concept of an "episode" has significance for purposes of self-defense in general, or "initial aggressor" in particular. The statute does not allude to this concept in any way and, in fact, clearly uses the term in reference to the person upon whom the defendant has applied physical force and to whom he is obligated to effectively communicate his intent to withdraw from the encounter. With regard to the defendant's shotgun blasts at the police, the pertinent question should be whether he initiated an aggression against them-not whether he initiated the exchange of gunfire with an unidentified third person before the police arrived.
¶ 74 As I believe the majority's carefully parsed rationalization demonstrates, questions concerning justification for using physical force in defense of one's person generally entail difficult factual determinations about the perceptions of the respective parties at every critical point in time and the reasonableness of those perceptions. Especially when multiple parties are involved, the trier of fact is tasked with determining the reasonableness of perceptions concerning not only who is under attack or imminent attack from whom but also who is allied with and assisting whom. Unlike the majority, I am disinclined, through strained construction or otherwise, to restrict the jury's role in weighing justification for the use of force, by depriving it of full knowledge of the controlling principles of self-defense.
¶ 75 I therefore respectfully dissent.
I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.