# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42707

LOREN WAGNER; DENA LE WAGNER; )
and GREGORY WAGNER, individually and )
as shareholders of WANOOKA FARMS, )
INC., an Idaho corporation, )
                                            )       Boise, January 2016 Term

     Plaintiffs-Respondents, )

v.                                            )       2016 Opinion No. 49

                                              )

RUSSELL WAGNER; STUART WAGNER; )      Filed: April 27, 2016
TOM WAGNER; and JEFF WAGNER, )
individually and as officers, directors and )      Stephen Kenyon, Clerk
shareholders of WANOOKA FARMS, INC., )
an Idaho corporation, )

                                              )

     Defendants, )

and )

                                              )

WANOOKA FARMS, INC., an Idaho )
corporation, )

                                              )

     Defendant-Appellant. )

---

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Hon. Michael J. Griffin, District Judge.

The judgment of the district court is <u>affirmed</u>.

Smith & Malek, PLLC, Coeur d'Alene, for appellant. Peter J. Smith argued.

Creason, Moore, Dokken & Geidl, PLLC, Lewiston, for respondents. Tod D. Geidl argued.

---

HORTON, Justice.

This is an appeal from a bench trial in which the district court found that the fair value of shares in Wanooka Farms, Inc. (Wanooka), equaled $3,344 per share. We affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Wanooka is a closely held family farming corporation. Its assets include a milling operation for processing lentils, 1,038 acres of land, a lake property, and homes. The farmland is

currently leased through a crop share plan. Shares in Wanooka are divided between the children of the farm's original incorporators, Arthur and Robert Wagner, as follows:

| Arthur Family Shareholders | Voting Shares | Nonvoting Shares | Robert Family Shareholders | Voting Shares | Nonvoting Shares | Total Shares |
|---|---|---|---|---|---|---|
| Loren Wagner | 110 | | Russell Wagner | 218.75 | | |
| Greg Wagner | 110 | | Jeff Wagner | 43.75 | 50 | |
| Stuart Wagner | 110 | 50 | Gary Wagner | 43.75 | 50 | |
| Thomas Wagner | 10 | 50 | Rob Wagner | 43.75 | 50 | |
| Dena Wagner | 10 | 50 | | | | |
| TOTAL | 350 | 150 | TOTAL | 350 | 150 | 1000 |

As early as 1998, the shareholders of Wanooka repeatedly and unsuccessfully attempted to split the corporation into two entities: one that held the mill and another that held the farming and timber land. The parties wanted to split the corporation pursuant to 26 U.S.C. § 355 (355 Split) to avoid tax consequences. Although the parties wanted to divide Wanooka's assets in different fashions at various times, the parties eventually began discussing a split that would have given Loren, Dena, and Greg Wagner (the Minority), who owned 28% of the shares, the mill and adjoining land. Russell, Stuart, Tom, and Jeff Wagner along with Wanooka (the Majority) would receive the remaining assets. It appears that the Minority wanted the mill and its adjoining land for employment and housing reasons.

During the course of negotiations over the 355 Split, two Uniform Agricultural Appraisal reports were commissioned to aid in dividing the corporation. One appraisal was done on September 28, 2007, which valued Wanooka's net assets at $1,557,000 using the cost approach. A second appraisal was done on June 28, 2012, which valued the net assets of Wanooka at $1,608,070 using the cost approach. Wanooka hired an attorney, Dan Cadagan, to assist in crafting a 355 Split.

A meeting was held on July 9, 2012. At the meeting, Cadagan presented the shareholders with a settlement proposal, which was based upon values that he laid out in a spreadsheet. The spreadsheet used the 2012 appraisal values and information obtained from Wanooka's corporate accountant, Terry Eng. The spreadsheet valued Wanooka as an ongoing business at $3,344,157, or $3,344 for each of Wanooka's 1,000 shares. The spreadsheet valued the mill at $1,709,063. At

the meeting, the Majority offered to sell the mill for this amount. Because the Minority could not afford this sum, the Minority extended a counter-offer that was rejected.

Another meeting was held three days later, on July 12, 2012. At this meeting, the Majority voted to cease the 355 Split attempts, shut down operations at the mill, and liquidate the mill's assets.

On August 22, 2013, the Minority filed a lawsuit that sought, among other things, to dissolve Wanooka. In response, the Majority elected to purchase the Minority's shares to avoid dissolution, pursuant to Idaho Code section 30-29-1434.[1] The parties stipulated to the determination of fair market value pursuant to Idaho Code section 30-29-1434(4). A four-day bench trial was held where the primary issue was fair value of Wanooka's shares.

Both sides presented evidence regarding the value of the shares. The Minority's expert, Dennis Reinstein, testified that the shares were worth $3,399 apiece. The Majority's expert, Paul Hyde, valued the Minority's voting shares at $1,540 and non-voting shares at $1,490.[2] The primary difference between the two experts' opinions is explained by Hyde's application of minority and marketability discounts.

In its memorandum decision dated November 19, 2014, the district court found that the value of each Wanooka share was $3,344. The district court selected July 11, 2012, as the date of valuation, finding that it was appropriate to place a value on the mill as a going concern prior to the Majority's decision of July 12, 2012, to cease mill operations. The district court found Cadagan's valuation of $3,344 per share to be the most credible and noted this value was close to that determined by Reinstein. The district court declined to apply minority and marketability discounts, as proposed by Hyde. The Majority timely appealed.

## II. STANDARD OF REVIEW

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). "On appeal, this Court examines the record to see if challenged findings of fact are supported by

---

[1] In 2015, the Legislature amended and re-codified statutes governing business associations, effective July 1, 2015. 2015 Idaho Sess. L. ch. 243. Idaho Code section 30-1-1434(4) was recodified as Idaho Code section 30-29-1434(4) and, apart from updated citations to other recodified provisions, was otherwise unchanged. 2015 Idaho Sess. L. ch. 243, § 69, p. 962. This opinion will cite to statutes as they are currently codified.

[2] On appeal, the Majority has urged this Court to adopt a modified form of Hyde's valuation to account for an additional $30,000 worth of lentils and crops that the district court found was not included in either expert's analysis. The Majority asserts that the fair value of each Minority share of Wanooka's voting stock is $1,555 and each share of non-voting stock is $1,508, as of August 21, 2013.

substantial and competent evidence." *Id.* Evidence is substantial and competent "if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004). "In applying that principle, the appellate court cannot reweigh the evidence, judge the credibility of the witnesses, or substitute its view of the facts for that of the trial court." *Boyd-Davis v. Baker*, 157 Idaho 688, 690, 339 P.3d 749, 751 (2014). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Const., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008). This Court exercises free review over issues of law. *Hoffer v. Callister*, 137 Idaho 291, 294, 47 P.3d 1261, 1264 (2002).

## III. ANALYSIS

The Majority contends that the district court's valuation of corporate shares at $3,344 is not supported by substantial and competent evidence, that the district court used the wrong date to value the shares and that the district court erred by refusing to discount the value of the Minority's shares due to their minority status and the lack of marketability of the shares.

### A. The district court's fair value determination is supported by substantial and competent evidence.

The Majority challenges the district court's determination of the value of the Wanooka shares, contending that this finding is not supported by substantial and competent evidence. The parties stipulated to the determination of fair value pursuant to Idaho Code section 30-29-1434(4), which provides:

> If the parties are unable to reach an agreement as provided for in subsection (3) of this section, the court, upon application of any party, shall stay the section 30-29-1430(2), Idaho Code, proceedings and determine the *fair value* of the petitioner's shares as of the day before the date on which the petition under section 30-29-1430(2), Idaho Code, was filed or as of such other date as the court deems appropriate under the circumstances.

There is no statutory definition of "fair value." Therefore, we find it useful to consider persuasive authority.

Idaho Code section 30-29-1434(4) is identical to the Model Business Corporation Act. *Compare* I.C. § 30-29-1434(4) *with* American Bar Association, Model Business Corporation Act, 14-145 § 14.34(d) (3rd ed. 2002) [hereafter MBCA]. While the legislature did not adopt the

4

comments to the MBCA, the comments do provide guidance as to the meaning of "fair value." In relevant part, the comments state:

> [Idaho Code section 30-29-1434] does not specify the components of "fair value," and the court may find it useful to consider valuation methods that would be relevant to a judicial appraisal of shares under [Idaho Code section 30-29-1330]. The two proceedings are not wholly analogous, however, and *the court should consider all relevant facts and circumstances of the particular case in determining fair value*. For example, liquidating value may be relevant in cases of deadlock but an inappropriate measure in other cases. If the court finds that the value of the corporation has been diminished by the wrongful conduct of controlling shareholders, it would be appropriate to include as an element of fair value the petitioner's proportional claim for any compensable corporate injury. In cases where there is dissension but no evidence of wrongful conduct, "fair value" should be determined with reference to what the petitioner would likely receive in a voluntary sale of shares to a third party, taking into account his minority status. If the parties have previously entered into a shareholders' agreement that defines or provides a method for determining the fair value of shares to be sold, the court should look to such definition or method unless the court decides it would be unjust or inequitable to do so in light of the facts and circumstances of the particular case.[3]

MBCA, § 14.34 comm. 4(b). Other courts have interpreted the MBCA as giving courts the flexibility and discretion to consider all relevant facts and circumstances of the particular case to determine fair value under provisions that are identical to Idaho Code section 30-29-1434(4). *Link v. L.S.I., Inc.*, 793 N.W.2d 44, 50 (S.D. 2010) (holding that MBCA Comment 4(b) and the lack of an exact definition for "fair value" give courts "substantial discretion" in "considering the equities of each case.");[4] *Cox Enterprises, Inc. v. News-Journal Corp.*, 469 F. Supp. 2d 1094, 1106 (M.D. Fla. 2006) (recognizing the MBCA gives court's "flexibility" in determining "fair value").[5]

The Majority's challenge as to whether substantial and competent evidence supported the district court's finding is multi-faceted. They point to the fact that Cadagan relied on a financial statement that overstated Wanooka's assets by $305,856. Although this may be true, Reinstein caught the error and reconciled that error, along with others. Despite this, he determined that the stock value was close to—but higher than—Cadagan's value.

---

[3] The bracketed changes reflect Idaho's codification of the pertinent provisions.
[4] Apart from statutory citations unique to South Dakota, S.D. Codified Laws § 47-1A-1434.3 is identical to Idaho Code section 30-29-1434(4).
[5] Fla. Stat. Ann. § 607.1436(4) is likewise substantially identical to Idaho Code section 30-29-1434(4).

The Majority also contends the district court failed to take into account Hyde's testimony that the lentil mill was in poor condition with many safety issues. However, this is not the correct inquiry. The issue is whether substantial and competent evidence supports *the district court's finding* of value, not whether substantial and competent evidence supports *Hyde's conclusion*. The district court had substantial reasons for refusing to accept Hyde's opinion as to the value of the stock. Hyde was not a Certified Public Accountant. Although his opinion was based upon the mill having many safety issues, he was not an OSHA expert, and he could not identify specific code violations. The district court also faulted Hyde's failure to include "numerous assets" and disagreed with Hyde's "opinion that the value of Wanooka Farms, Inc. should not include the lentil milling operation as an ongoing business."

At oral argument, the Majority emphasized faults in Cadagan's spreadsheet. Cadagan, when attempting to assist the parties in effectuating a 355 Split, prepared the spreadsheet and presented it at the July 9, 2012, meeting as a basis for settlement discussions. The spreadsheet valued each Wanooka share at $3,344. The spreadsheet may contain inaccuracies and is not the sort of appraisal that would ordinarily be presented at trial. However, it was not prepared in anticipation of trial. At trial, the Minority relied upon Reinstein's appraisal, which was based upon a more detailed analysis. Nevertheless, the district court selected the Cadagan valuation as the most credible presented in the course of the trial.

On appeal we are not free to question the district court's credibility determinations. *Akers v. Mortensen*, 147 Idaho 39, 43, 205 P.3d 1175, 1179 (2009) ("This Court will not substitute its view of the facts for that of the trial court."). While Cadagan's spreadsheet is certainly subject to criticism, the district court's rejection of the valuation advanced by Hyde on behalf of the Majority was based upon Hyde's lack of credentials to evaluate the mill's safety issues and his refusal to place a value on the mill as a going concern. We have consistently held that when reviewing a trial court's findings of fact we examine whether there is "evidence in the record" to support the factual finding. *Sells v. Robinson*, 141 Idaho 767, 771, 118 P.3d 99, 103 (2005); *Hoskinson v. Hoskinson*, 139 Idaho 448, 456, 80 P.3d 1049, 1057 (2003). This standard of review is based on the elemental concept that trial courts are constrained to base their findings of fact on the evidence that was presented. Although it is easy to criticize Cadagan's appraisal, the fact remains that the Majority failed to present the district court with an appraisal containing values that it deemed to be credible. The district court did not err by relying on the evidence that

6

it deemed to be most credible, and we will not find that the district court committed error based upon the parties' failure to present more reliable evidence.[6]

We hold that the district court had substantial and competent evidence to support its fair value determination of $3,344. The district court relied upon a value generated by Wanooka's previous attorney, Cadagan. That value was contained in a spreadsheet that was based upon a June 28, 2012, Uniform Agricultural Appraisal Report values and information obtained from Wanooka's corporate accountant, Eng. Although it is far from clear that Cadagan possessed the requisite expertise to appraise the corporation, the valuation from the Minority's expert buttresses the district court's finding. The district court noted that Cadagan's value of $3,344 was very close to the $3,399 value Reinstein arrived at. Reinstein was clearly qualified to appraise closely held companies, having served as an expert in hundreds of cases and having appraised many agricultural processing facilities. Reinstein largely relied on the same sources as Cadagan to appraise the farm, including the June 28, 2012, Uniform Agricultural Appraisal Report and a financial statement generated by Eng. The opinions of Cadagan and Reinstein provide evidence that a reasonable trier of fact could accept and rely upon in determining whether a disputed point of fact had been proven.

## B. The district court did not abuse its discretion by using July 11, 2012, as the date for valuing Wanooka.

The Majority argues the district court erred by choosing July 11, 2012, the day before the mill closed, as the valuation date. The Majority asserts that the district court should have chosen Hyde's August 21, 2013, valuation date and the date presumptively prescribed by statute. They point out that Wanooka lost $839,162 after the lentil mill was closed and argue the district court did not take this into account. Idaho Code section 30-29-1434(4) provides that a fair value determination should be made "as of the day before the date on which the petition under section 30-29-1430(2), Idaho Code, was filed *or as of such other date as the court deems appropriate under the circumstances*."

Statutory interpretation "should begin with an examination of the literal words of the statute, and this language should be given its plain, obvious, and rational meaning." *In re*

---

[6] The outcome of the trial brings to mind the acronym "GIGO" or "garbage in, garbage out," which is "[u]sed to express the idea that in computing and other spheres, incorrect or poor quality input will always produce faulty output." Oxford Dictionaries, Garbage in, Garbage Out (February 18, 2016) http://www.oxforddictionaries.com/us/definition/ american_english/garbage-in-garbage-out. In the context of legal proceedings, the GIGO principle reflects the obvious: The quality of a court's factual findings can be no better than the quality of the evidence the parties provide to it.

*Williamson*, 135 Idaho 452, 455, 19 P.3d 766, 769 (2001). Legislative intent should be "derived from a reading of the whole act at issue." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009). This Court has interpreted discretionary language, such as the word "may," as expressing the right to exercise discretion. *See Rife v. Long*, 127 Idaho 841, 848, 908 P.2d 143, 150 (1995). Likewise, the discretionary language in Idaho Code section 30-29-1434(4) grants the district court discretionary authority to pick a valuation date that it "deems appropriate under the circumstances."

The Majority has not shown that the district court abused the discretion afforded it by Idaho Code section 30-29-1434(4). The district court recognized that it had discretion to select an appropriate valuation date. It acted within the bounds of Idaho Code section 30-29-1434(4), and it did so by the exercise of reason. The district court selected July 11, 2012, as the valuation date because it believed that Wanooka should be valued as of the day before the Majority elected to close the mill and liquidate its assets. The district court faulted the Majority for closing the mill because it found that the mill was economically viable and that its closure resulted in a net loss to Wanooka. It was within the district court's discretion in doing so.

## C. We decline to apply a rule that mandates discounting shares for minority and marketability reasons when determining fair value.

The district court declined to apply certain discounts proposed by Hyde, because the parties had always shown their intent to divide the property between all the parties in equal portions. The Majority argues the district court erred by not reducing the value of the Minority's shares because they were minority, non-marketable shares. They argue for a bright-line requirement that such discounts must be imposed as a matter of law.

This is a matter of first impression in Idaho. In their briefing, the Majority makes a distinction between two classifications of discounts. They refer to the minority discount stemming from a lack of corporate control as a "DLOC." They also refer to the discount for a lack of marketability as a "DLOM." Some courts have made this distinction, citing the fact that a "minority discount" is applied because non-controlling shares are worth less due to their reduced decision-making power and the "marketability discount" is applied because shares in a closely-held corporation cannot be readily sold in the open market. *See e.g. Charland v. Country View Golf Club, Inc.*, 588 A.2d 609, 611 (R.I. 1991). The distinction between the two is that a marketability discount applies to *all* stock in a corporation that is not widely traded, whereas a

8

minority discount would *only* apply to stock held by minority shareholders. *Robblee v. Robblee*, 841 P.2d 1289, 1294 (Wash. 1992).

The Majority seizes upon a sentence in the comments to the MBCA in support of its argument that such minority and lack of marketability discounts were required to be applied by the district court. That comment provides: "In cases where there is dissension but no evidence of wrongful conduct, 'fair value' *should* be determined with reference to what the petitioner would likely receive in a voluntary sale of shares to a third party, taking into account his minority status." MBCA, § 14.34 comm. 4(b). Although we have found the comment to be important in evaluating the meaning of "fair value," despite the Legislature's failure to adopt those comments, we do not read the comment as suggesting that DLOC and DLOM discounts are mandatory. The comment simply states fair value "should" be determined taking into account minority discounts. The word "should" is not mandatory. *Twin Falls Cnty. v. Idaho Comm'n on Redistricting*, 152 Idaho 346, 349, 271 P.3d 1202, 1205 (2012); *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 134, 176 P.3d 126, 139 (2007).

Decisions from other courts explain why such minority and lack of marketability discounts should not be mandatory.

> Within the context of a dissolution proceeding, almost all of the courts that have considered the question have rejected the application of a minority discount, the courts reasoning, in part, that if the corporation had been dissolved, the minority shareholder would have received the pro-rata value of the shares, with no consideration given to whether the shares represented a controlling interest. Those courts have also noted that the majority should not benefit from electing to buy out the minority shares, and that since the corporation is purchasing the shares, the fact that the shares do not represent a controlling interest is irrelevant.

Christopher Vaeth, *Propriety of applying minority discount to value of shares purchased by corporation or its shareholders from minority shareholders*, 13 A.L.R.5th 840 (1993) (citations omitted).

> In a number of states, oppressed minority shareholders or deadlocked shareholders are provided a mechanism by statute under which they may seek dissolution of the corporation. Depending on the statute at issue, the court may require transfer of shares to one of the parties in the dispute, or may afford the corporation the right to elect to buy the disgruntled shareholders out. When the parties cannot agree as to the transfer price in the context of these remedies, the court performs an appraisal and determines value of the shares as a question of fact after a valuation trial. Courts differ as to the role of a marketability discount in valuing shares under a corporate dissolution statute, and in these cases the precise language of the statute must be interpreted and applied. *Several courts*

9

*have found that minority shareholders are entitled to receive the full proportionate share of their stock without any marketability discount in light of the nature and function of the statutory remedy for oppressed or deadlocked shareholders. Other courts view the determination of value as a typical fact question and require consideration of all factors, including whether a marketability discount is necessary to reflect the fair market value of the shares at issue, and then decide to allow or to disallow a marketability discount based upon the weight of the evidence before the court.*

Stephen A. Hess, *Use of Marketability Discount in Valuing Closely Held Corporation or Its Stock*, 16 A.L.R.6th 693 (2006) (citations, footnotes omitted).

The cases cited by the Majority simply demonstrate that minority and lack of marketability discounts may be applied in some cases. *Matter of Seagroatt Floral Co., Inc.*, 78 N.Y.2d 439, 446, 583 N.E.2d 287 (1991) (stating a court should consider risk associated with share liquidity but not mandating that discounts be applied); *McCauley v. Tom McCauley & Son, Inc.*, 724 P.2d 232, 244 (N.M. 1986) (upholding trial courts' discretion to apply a discount to non-controlling shares); *Hall v. Glenn's Ferry Grazing Ass'n*, No. CV 03 386 S BLW, 2006 WL 2711849, at *10 (D. Idaho Sept. 21, 2006) (applying a minority discount under the "circumstances of this particular case"); *Ferolito v. Arizona Beverages USA, LLC*, 2014 N.Y. Slip Op. 32830 at 14, 33 (N.Y. S.Ct. 2014) http://cases.justia.com/new-york/other-courts/2014-2014-ny-slip-op-32830-u.pdf?ts=1415658830 (unpublished Ney York district court opinion stating a court "may" incorporate a marketability discount and recognizing that many New York courts have applied a marketability discount.). The Majority does not cite a case that supports its assertion that minority and lack of marketability discounts must be applied as a matter of law.

Idaho Code section 30-29-1434(4) does not contain a definition of "fair value," suggesting legislative intent to give courts the ability to consider a multitude of facts in arriving at a valuation. The comments to the MBCA indicate minority discounts *may* be considered. For these reasons, we hold minority and lack of marketability discounts are just another fact that a court may consider in determining fair value and we expressly reject the Majority's invitation to require their use as a matter of law. The Majority has not shown that the district court committed legal error by failing to apply minority and marketability discounts in this present case.

**D. We award attorney fees on appeal to the Minority.**

The Majority requests attorney fees on appeal pursuant to Idaho Code section 12-120(3). The Minority also requests attorney fees on appeal under Idaho Code sections 12-121 and 12-123.

The Majority is not entitled to an award of attorney fees under Idaho Code section 12-120(3) because it is not the prevailing party. *Renshaw v. Mortgage Elec. Registration Sys., Inc.*, 155 Idaho 656, 659, 315 P.3d 844, 847 (2013). Although the Minority requests attorney fees under Idaho Code section 12-123, "that statute does not apply on appeal." *Markin v. Grohmann*, 153 Idaho 223, 228, 280 P.3d 726, 731 (2012).

This leaves the Minority's request for attorney fees under Idaho Code section 12-121 for our consideration. "Such an award is appropriate when this Court has the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 434, 95 P.3d 34, 52 (2004) (quoting *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012). Here, the Majority's first issue was a thinly disguised request for this Court to re-weigh the evidence. As such, this issue was frivolous.

We recognize that the minority/marketability discount issue is a question of first impression in Idaho. "[T]his Court typically does not award attorney fees in matters of first impression." *Arnold v. City of Stanley*, 158 Idaho 218, 224, 345 P.3d 1008, 1014 (2015). Nevertheless, this Court has awarded attorney fees on issues of first impression in certain circumstances. *Id.* (awarding attorney fees on issue of first impression when appellant's arguments went against the plain language of a statute); *Castrigno v. McQuade*, 141 Idaho 93, 98, 106 P.3d 419, 424 (2005) (awarding attorney fees when appellants "failed to add any new analysis or authority to the issues raised below" that were resolved by a district court's well-reasoned authority). We find the Majority's appeal of this issue to be frivolous, unreasonable, and without foundation. The Majority did not identify any jurisdiction that has imposed a bright-line requirement that minority and marketability discounts are always to be applied. Thus, we award the Minority attorney fees incurred in this appeal.

## IV. CONCLUSION

We affirm the judgment of the district court and award attorney fees and costs to the Minority.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.

11