COLORADO COURT OF APPEALS                    **2016COA155**

Court of Appeals No. 15CA1435
City and County of Denver District Court No. 14CV34053
Honorable Morris B. Hoffman, Judge

Layton Construction Co., Inc., a Utah corporation,

Plaintiff-Appellant,

v.

Shaw Contract Flooring Services, Inc., d/b/a Spectra Contract Flooring, a Georgia corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE J. JONES
Graham and Miller, JJ., concur

Announced October 20, 2016

The Holt Group LLC, L. Tyrone Holt, Kevin P. Walsh, Kevin D. Poyner, Denver, Colorado, for Plaintiff-Appellant

Hall & Evans, LLC, Darin J. Lang, Brian Molzahn, Elizabeth K. Olson, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Layton Construction Co., Inc. (Layton), appeals the district court's summary judgment for defendant, Shaw Contract Flooring Services, Inc. (Shaw), based on the doctrine of claim preclusion.  Because we conclude that all of Layton's contentions challenging the district court's application of that doctrine are without merit, we affirm.

## I.  Background

¶ 2     Layton was the general contractor responsible for construction of a hotel in Vail, Colorado.  It hired Shaw, and many other subcontractors, to perform work on the project.

¶ 3     In June 2009, the property owner (referred to by the parties as BCRE) terminated its contract with Layton and, not too long thereafter, gave Layton notice of numerous construction defects in the project, a few of which related to Shaw's work.  Layton sued BCRE alleging that BCRE had failed to pay for work, seeking over $27 million in damages.  After BCRE asserted counterclaims against Layton for defective workmanship (seeking more than $25 million in damages), Layton added claims against various subcontractors, including Shaw.

1

¶ 4       Pursuant to an indemnification clause in the subcontract, Layton's sixth claim for relief sought indemnification from Shaw for "all damages and costs" arising from any liability it might have to BCRE.[1]  In response to Shaw's interrogatory (Interrogatory 8) asking Layton to "identify all material facts upon which [Layton] based [the indemnification] claim," Layton stated, under oath, that those facts included "Shaw's failure to provide a defense or pay Layton's costs to defend against [BCRE's] claims that relate to or arise out of Shaw's allegedly deficient or defective work."  In responding to another interrogatory (Interrogatory 4) asking Layton to describe every breach of the indemnification clause, Layton specifically noted "Shaw's failure to provide a defense or pay Layton's costs."  Layton's response to Interrogatory 8 expressly incorporated its response to Interrogatory 4.[2]

---

[1] The indemnification clause provided for indemnification from "all damages, costs and expenses incurred in connection" with "all claims, demands, suits, proceedings, attachments, levies, penalties, damages and losses, liabilities, liens, claims for indemnification or contribution, and any other matter whatsoever" "arising out of or resulting from," among other things, Shaw's work on the project.

[2] In its answer brief on appeal, Shaw pointed out that Layton had said in response to Interrogatory 8 that its indemnification claim included attorney fees and costs incurred in defending against

¶ 5    Layton also asserted a claim for contribution against Shaw (the seventh claim for relief), alleging that if Layton was found to be liable to BCRE for "the tortuous [sic] acts of" Shaw, Shaw should be required to contribute payment for such liability.  At Layton's request, the district court dismissed that claim without prejudice in March 2011.

¶ 6    Later, after BCRE specifically identified Shaw's allegedly defective work (totaling about $9,000 in value), Layton moved to voluntarily dismiss its indemnification claim against Shaw "with prejudice."  Layton's motion said that the dismissal would include "those claims that have been *or could have been* asserted in this lawsuit."  (Emphasis added.)  The motion purported not to seek dismissal of "any new or future claims," which it defined as those

---

BCRE's claims.  In its reply brief, however, Layton ignored its response to Interrogatory 8 and instead argued that its response to Interrogatory 4 was irrelevant, for a number of unconvincing reasons.  At oral argument, Layton's counsel argued that Layton's response to Interrogatory 8 was irrelevant because Layton objected to that interrogatory, but he did not explain why the interrogatory was objectionable or why any objection would render the answer irrelevant to this issue.  (The record shows that Layton's only specific objection to the interrogatory was an attorney work-product objection.)  We perceive no relevant, nonfrivolous objection to that standard interrogatory and, in any event, Layton went on to answer the interrogatory despite the objections.  Its sworn answer to the interrogatory is enlightening, and we therefore consider it.

"that may arise or be asserted in the future in any other lawsuits or circumstances, which may be subject to the indemnification provision." The proposed order Layton submitted with its motion repeated these parameters and said that each party would bear its own attorney fees and costs. The district court did not sign Layton's proposed order, but instead entered a written order on June 6, 2011, saying only, as now relevant, that Layton's claims were dismissed with prejudice.

¶ 7 The case between Layton and BCRE (in which several subcontractors remained parties) continued. In July 2014, following a bench trial, the court awarded Layton just over $5 million on its claims against BCRE, which was far less than Layton had sought. The court also ruled that Layton was not liable to BCRE for defective work because BCRE had materially breached the contract by failing to give Layton contractually required notices of defective work and an opportunity to correct the work. With respect to the subcontractors remaining in the case, the court found that they were liable to Layton under the indemnification provisions in their subcontracts (which were identical to the provision in Shaw's subcontract) for the expenses (including attorney fees and costs)

4

that Layton had incurred in defending against BCRE's claims, to the extent those expenses were attributable to work performed by each subcontractor.

¶ 8     Shortly thereafter, Layton filed this case against Shaw and several other subcontractors.  It asserted claims against Shaw for contractual and common law indemnity and declaratory judgment seeking an award of "attorney fees, costs and expenses" it had incurred in defending against BCRE's claims in the prior case.3 Layton asserted that it could seek indemnification from Shaw pursuant to a provision in the Construction Defect Action Reform Act (CDARA), section 13-80-104, C.R.S. 2016, which allows claims for indemnification against subcontractors to be filed within ninety days of a final judgment against a contractor.  § 13-80-104(1)(b)(II), (1)(c) (indemnification claim "[s]hall be brought within ninety days

---

3 Layton claims to have incurred over $16 million in attorney fees and costs in defending against BCRE's claims.  Layton's complaint also alleged losses resulting from Layton's payments for work that the subcontractors had not performed.  But it is not clear if Layton alleged that Shaw was one of those subcontractors, and in any event Layton does not assert on appeal any argument relating to those alleged losses.

after [settlement of or final judgment against the contractor in]" the construction defect claim).[4]

¶ 9     Shaw moved for summary judgment.  It argued that Layton's indemnification claims are barred by the doctrine of claim preclusion because the court in the prior case had dismissed those claims with prejudice.  The district court agreed, rejecting Layton's contrary arguments in a thorough written order.

## II.  Standard of Review

¶ 10    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  C.R.C.P. 56(c).  We review de novo an order granting summary judgment based on claim preclusion. *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 2012 COA 22, ¶ 13.

---

[4] Interestingly, there was no settlement of the prior case as between Layton and BCRE, nor was there any judgment "against" Layton on BCRE's claims in the prior case, calling into question the applicability of section 13-80-104(1)(b)(II), C.R.S. 2016, under its own terms.  But Shaw has not raised that issue, so we will not address it.

¶ 11 To the extent Layton's contentions require us to construe CDARA, that presents a question of law that we also review de novo. *Sperry v. Field*, 205 P.3d 365, 367 (Colo. 2009). In interpreting a statute we strive to discern and give effect to the General Assembly's intent. *Hassler v. Account Brokers of Larimer Cty., Inc.*, 2012 CO 24, ¶ 15. To do this, we look first to the statutory language itself; we give the words and phrases used therein their plain and ordinary meanings, and we read the language in the dual contexts of the entire statute and the comprehensive statutory scheme. *Id.*; *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010); *BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 813 (Colo. 2008). After doing this, if we conclude that the statutory language is unambiguous we apply it as written and we do not resort to other rules of statutory construction. *Reno v. Marks*, 2015 CO 33, ¶ 20; *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006).

### III. General Law of Claim Preclusion

¶ 12 "Claim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." Argus Real Estate,

*Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005);

*accord Lobato v. Taylor*, 70 P.3d 1152, 1165 (Colo. 2003). It serves

two primary purposes: protecting litigants from the burden of

relitigating issues against the same party (or its privy) and

promoting judicial economy by preventing needless litigation.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Lobato*, 70

P.3d at 1165-55.

¶ 13    "For a claim in a second judicial proceeding to be precluded by

a previous judgment, there must exist: (1) finality of the first

judgment, (2) identity of subject matter, (3) identity of claims for

relief, and (4) identity or privity between parties to the actions."

*Argus Real Estate*, 109 P.3d at 608; *accord Loveland Essential Grp.,*

¶ 14.

## IV. Analysis

¶ 14    Layton makes three fundamental contentions: (1) its claims

against Shaw in this case are not identical to those it asserted

against Shaw in the prior case; (2) CDARA modifies the doctrine of

claim preclusion in the construction defect context by requiring (or

at least allowing) splitting of indemnification claims; and (3) various

exceptions to the claim preclusion doctrine apply to this action. We address and reject each of these contentions in turn.

## A. Identity of Claims

¶ 15    Layton argues that its claims in this case are not identical to those it asserted in the prior case both because it did not seek indemnity for attorney fees and costs in the prior case and because its claims in this case do not arise out of the same transaction as its claims in the prior case.[5] Both of these arguments are based on distortions of, or are flat out contrary to, applicable, well-settled legal principles.

¶ 16    We need not decide whether Layton sought indemnification for fees and costs in the prior case because it obviously could have done so, a fact it admitted in opposing Shaw's summary judgment motion.[6] Layton does not contest that any claim for indemnification

---

[5] Layton concedes that the other three requirements of claim preclusion are met.

[6] Shaw, however, has much the better of the argument on whether Layton sought indemnification of fees and costs in the defect case. Layton's sworn discovery responses in the prior case said that the attorney fees and costs it had incurred and were incurring in defending against BCRE's claims were included in its indemnification claim. And the language of Layton's complaint in

based on Shaw's duty to defend accrued, at the latest, in 2009 when it first began incurring attorney fees and costs in connection with BCRE's claims, which Shaw would not pay.  *See Jones v. Sun Carriers, Inc.,* 856 F.2d 1091, 1094 (8th Cir. 1988) (indemnity claim for costs and expenses accrues when indemnitee has made a payment or otherwise expended sums, while indemnity claim for liabilities arises when a liability is legally imposed; applying Arkansas law); *Farmers Ins. Exch. v. Am. Mfrs. Mut. Ins. Co.,* 897 P.2d 880, 882 (Colo. App. 1995) (duty to defend arises when claims are asserted against party to whom the duty is owed); *see also Sterenbuch v. Goss,* 266 P.3d 428, 433 (Colo. App. 2011) (once some injury has occurred, a claim has accrued even if further injury continues to occur).[7]  That Layton may not have known the full extent of Shaw's liability while Shaw was a party in the prior case does not matter; as Layton conceded in opposing Shaw's summary

---

that case was certainly broad enough to include a claim for such fees and costs.

[7] Layton's complaint in this case expressly alleges that in 2009 it incurred such fees and costs before it added Shaw to the prior case. In responding to Shaw's motion for summary judgment, Layton submitted an affidavit repeating this allegation.  Its opening brief in this appeal does so as well.

judgment motion, it could have presented evidence of and obtained a judgment for all attorney fees and costs incurred or likely to be incurred in the prior case. (Indeed, after the district court entered its judgment of liability against the subcontractors in the prior case, Layton sought to have the court determine how much the subcontractors owed Layton for attorney fees and costs it had expended relating to BCRE's claims.)

¶ 17    Layton's argument that the claims are not identical because they do not arise from the same transaction or series of transactions is meritless. Colorado law treats "a single claim broadly for purposes of merger and bar, to include more than merely the same cause of action or theory of recovery." In re Greene, 2013 CO 29, ¶ 11. A single claim "embrace[s] all remedial rights of a plaintiff against a defendant growing out of the relevant transaction or series of connected transactions." Id. (emphasis added); see also Argus Real Estate, 109 P.3d at 609 ("[C]laim preclusion also bars a litigant from splitting claims into separate actions because once judgment is entered in an action it 'extinguishes the plaintiff's claim . . . includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any

11

part of the transaction, or series of connected transactions, out of which the action arose.'" (quoting Restatement (Second) of Judgments § 24 (Am. Law Inst. 1982))). "Generally, a contract is considered to denote a single transaction for the purpose of claim preclusion, and therefore claims for different breaches of a contract ordinarily must be brought in the same action." *Loveland Essential Grp.*, ¶ 16; *see also Sun Indem. Co. of N.Y. v. Landis*, 119 Colo. 191, 195, 201 P.2d 602, 604 (1948) (stating, perhaps in dictum but perhaps as an alternative holding, that "the right of recovery of the indemnitee against the indemnitor is a single right of action which cannot be split"); *Goodstein v. Silver Plume Mines Co.*, 79 Colo. 269, 276, 245 P. 714, 716 (1926) ("A party is not ordinarily entitled to split his cause of action by suing to recover a portion of his claim arising out of an entire indivisible contract, and thereafter to institute another action for the balance of the claim.").[8]

---

[8] A claim for attorney fees and costs pursuant to a contractual indemnification provision seeks such an award as damages, not costs, and therefore must be submitted to the fact finder; contrary to Layton's suggestion, it may not be submitted in a motion under C.R.C.P. 121, section 1-22. *See Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo. 1993) (if attorney fees are damages, they "must be determined by the trier of fact and proven during the damages phase"); *Sun Indem. Co. of N.Y. v. Landis*, 119 Colo. 191,

¶ 18    Layton's claims in both cases arose out of a single contract. Indeed, they arose out of the same provision of the same contract. And they all related to BCRE's claims against Layton for construction defects at the same project.  Given all that, Layton's assertions that the claims in both cases did not form a convenient trial unit and that the parties would not reasonably have expected to litigate the current claims in the prior case are untenable.  *See Williams v. Ins. Co. of N. Am.*, 692 So. 2d 654, 657-58 (La. Ct. App. 1997).[9]

---

195, 201 P.2d 602, 604 (1948) (when a party seeks indemnification for litigation expenses, those expenses are damages); *Lawry v. Palm,* 192 P.3d 550, 568 (Colo. App. 2008) (attorney fees sought as a legitimate consequence of the contract sued upon are damages); *see also* C.R.C.P. 121, § 1-22(2) (rule does not apply to attorney fees awardable as damages).  In the prior case, Layton expressly and repeatedly characterized the fees and costs at issue as damages. The district court in the prior case did so as well.

[9] Layton's assertions ring especially hollow in light of the fact that it pursued claims for indemnification of attorney fees and costs against several subcontractors in the prior case and obtained judgment for such indemnification.  And after the judgment in that case, Layton asked the district court to hold a hearing on how much Shaw should be required to pay Layton to indemnify it for attorney fees and costs incurred in that case.  Though Layton submitted an affidavit from Michael Colligan, its Manager of Contract Risk, saying that Layton had not intended to dismiss any indemnification claim for attorney fees, costs, and expenses against Shaw in the prior case, we are not persuaded that Mr. Colligan's

¶ 19    In sum, because Layton could have asserted an indemnity claim against Shaw for attorney fees and costs in the prior case, there is identity of claims. *Argus Real Estate*, 109 P.3d at 608-09; *Loveland Essential Grp.*, ¶ 15; *cf. Thresherman's Mut. Ins. Co. v. Wallingford Mut. Ins. Co.*, 26 F.3d 776, 781-83 (7th Cir. 1994) (indemnification claim that could have been brought in prior action in which indemnitee dismissed claims against indemnitor with prejudice barred by claim preclusion; indemnification claims, including the one for fees and costs, arose out of the same transaction and could not be split).

## B.  CDARA

¶ 20    Layton argues that the ninety-day provision of CDARA, section 13-80-104(1)(b)(II), modifies the common law doctrine of claim

---

affidavit creates a *genuine* issue of material fact regarding Layton's *reasonable* expectations given the law on this issue and Layton's own conduct in the prior case (which includes, in addition to its pursuit of fees and costs against other subcontractors, its sworn interrogatory responses (which Mr. Colligan executed) and statements in the motion to dismiss).  *See Anderson v. Lindenbaum,* 160 P.3d 237, 241 (Colo. 2007) (affidavit that conflicts with prior sworn testimony may be disregarded if it presents no credible explanation for the contradiction); *see also Williams v. Ins. Co. of N. Am.*, 692 So. 2d 654, 658 (La. Ct. App. 1997) ("Nor do we think that reasonable parties would expect that the attorney's fees for an action would be an entirely separate matter from the action itself.").

preclusion as to indemnification for attorney fees and costs by *requiring* a contractor to wait until after it has been found liable to sue subcontractors for such indemnification. Put another way, Layton argues that the General Assembly intended "to eliminate the practice of adding every party and every claim in one proceeding and intended that only subcontractors responsible for the alleged damages be permitted to participate in the defect action."[10] We perceive no such intent.

In CLPF-Parkridge One, L.P. v. Harwell Investments, Inc., 105 P.3d 658 (Colo. 2005), the supreme court held that the ninety-day provision "is a statute of limitations tolling provision[,] not . . . a ripeness provision that prevents a defendant in a construction defect lawsuit from . . . bring[ing] an indemnity or contribution claim against or add[ing] a party allegedly responsible for the construction defect." Id. at 659. Thus, it "does not bar . . . third-party claims for indemnity or contribution in construction defect lawsuits; rather, [it] also allows indemnity or contribution claims to

---

[10] Layton's argument is at odds with the fact that it sued several subcontractors for indemnification for attorney fees and costs in the prior case and obtained judgment against them for such fees and costs.

be brought by a separate lawsuit." *Id.*; *accord Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199, 1205 (Colo. App. 2008); *Fire Ins. Exch. v. Monty's Heating & Air Conditioning*, 179 P.3d 43, 46 (Colo. App. 2007).  Though Layton argues that *CLPF-Parkridge* does not apply because it did not concern an indemnification claim for attorney fees and costs, that is a distinction without a meaningful difference.  The supreme court's interpretation of the meaning of CDARA — that it allows but does not require an indemnitee to sue for indemnification in a defect case — applies equally to such claims.[11]  Indeed, because an indemnification clause imposing a duty to defend (and liability for costs of defense) creates liability for the indemnitor regardless of whether an indemnitee is found liable to a third party, there would be no reason for the General Assembly to require an indemnitee to

---

[11] Layton argues in the alternative that *CLPF-Parkridge* should be modified or overturned.  But of course we do not have authority to do either.  *People v. Novotny*, 2014 CO 18, ¶ 26 (only the supreme court can overrule its precedent on matters of state law); *In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (the court of appeals must follow precedent of the Colorado Supreme Court).

wait until its liability to a third party is determined before seeking indemnification for fees and costs.[12]

¶ 21   Contrary to Layton's assertion, we see nothing "absurd" about construing CDARA so as not to require a separate lawsuit against a subcontractor for indemnification for attorney fees and costs — that is, to allow such claims to be asserted in the defect case.  Nor does such an interpretation render the ninety-day provision of section 13-80-104(1)(b)(II) meaningless.  In cases in which indemnitors have not been made parties to the construction defect case, the provision applies.

¶ 22   The following question, however, remains: does CDARA alter the application of the doctrine of claim preclusion where a contractor asserts an indemnification claim against a subcontractor in a construction defect case, as CDARA allows?  That is, even though CDARA allows a contractor to sue a subcontractor for indemnification in the defect case, does it permit claim splitting, the practice of asserting part of a claim in one case and part of the

---

[12] If the result of the first case is a finding that the contractor is not liable to the owner, there is obviously no claim for indemnification for such liability against the subcontractor.  But such a result does not extinguish the subcontractor's liability for costs of defense.

claim in a later case? Though Layton argues (apparently in the alternative) that it does, we conclude that it does not.

¶ 23    Because the common law doctrine of claim preclusion is "fundamental to the operation of the judicial system," a statutory provision will not be deemed to create exceptions to the doctrine unless it does so "in a manner that is undoubtedly clear." *Argus Real Estate*, 109 P.3d at 611. This limitation is consistent with the broader principle that "statutes may not be interpreted to abrogate the common law unless such abrogation was clearly the intent of the General Assembly." *Id.* (alteration omitted) (quoting *Preston v. Dupont*, 35 P.3d 433, 440 (Colo. 2001)). A statute may do so only "expressly or by clear implication." *Id.*

¶ 24    We see nothing in CDARA expressly or by clear implication abrogating the doctrine of claim preclusion in the circumstances before us. As *CLPF-Parkridge* holds, the provision of CDARA allowing indemnification claims after an indemnitee's liability has been determined is only a tolling provision. Its limited purpose is only to allow such claims. It does not purport to render inapplicable claim preclusion where a contractor chooses instead to sue the subcontractor in the defect case. And where an indemnitor

is made a party to the construction defect case, as CDARA allows, the policy concerns which animate the doctrine of claim preclusion — protecting litigants from the burden of multiple cases and preventing needless litigation — retain their force. Nothing in CDARA indicates otherwise. *Cf. id.* at 611-12 (holding that section 15-11-1106(2), C.R.S. 2016, which allows an action to reform an instrument found to violate the rule against perpetuities, did not abrogate claim preclusion for quiet title actions).

### C. Exceptions to Claim Preclusion

¶ 25 Layton contends in the alternative that certain exceptions to the doctrine of claim preclusion apply to this case. None of them do.

¶ 26 First, Layton argues that Shaw somehow agreed to the filing of a later indemnification case because (1) Shaw failed to object to Layton's motion to dismiss without prejudice its contribution claim in the prior case and (2) Shaw did not object to the alleged reservation of the indemnification claim in Layton's motion to voluntarily dismiss with prejudice the indemnification claim in the prior case. *See* Restatement (Second) of Judgments § 26(1)(a) (parties may agree to allow a plaintiff to split its claim).

¶ 27 But we do not see how Shaw's failure to object to the dismissal without prejudice of the contribution claim constituted an agreement to allow Layton to assert an indemnification claim in a later case. And Layton's motion to dismiss its indemnification claim did not purport to reserve its current indemnification claims. To the contrary, it expressly sought dismissal with prejudice of claims that it had asserted and those which it could have asserted. As discussed, Layton could have asserted its current indemnification claims in the prior case (a point Layton conceded in the district court). Those claims did not arise after that case (the category of claims Layton purported to reserve). They had already arisen. Layton's current position that its motion did not seek dismissal of its current indemnification claims with prejudice is pure dissembling.[13]

¶ 28 Second, Layton argues that the district court in the prior case allowed it to assert its current indemnification claims in a subsequent case. *See* Restatement (Second) of Judgments

---

[13] Further, in noting that each party would bear its own attorney fees and costs, Layton's proposed order of dismissal expressly contemplated that Shaw would have no liability for Layton's attorney fees and costs incurred in the prior case.

20

§ 26(1)(b) ("[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action"). But nothing in the court's order of dismissal remotely suggests such permission. And to the extent Layton argues that the court implicitly accepted the reservation of claims in the motion to dismiss, there is no evidence that the court did so. Further, we have already concluded that Layton's definition of "future claims" in its motion did not include its current indemnification claims.

¶ 29 Third, Layton again argues that CDARA allows claim splitting. *See* Restatement (Second) of Judgment § 26(1)(d) (a statute may allow a plaintiff to split its claim). As discussed above, however, nothing in CDARA allows claim splitting in these circumstances.

¶ 30 Fourth, Layton argues that the fact it was "suffering from recurring harm by Shaw's unwillingness to defend" it constitutes good reason to allow it to split its claim. *See* Restatement (Second) of Judgments § 26(1)(e) (claim may be split for reasons of substantive policy in a case involving a continuing or recurrent wrong). Layton does not identify any substantive policy supporting claim splitting in this context, and we perceive none. And we observe that although Layton argues that CDARA is intended to

21

streamline litigation, it fails to explain how requiring separate actions, or allowing a second action against a subcontractor after the contractor has already sued the subcontractor once for the same transaction, as it claims CDARA does, is consistent with that goal.

¶ 31    "[J]udicially[] recognized exceptions to claim preclusion are extremely rare." *Argus Real Estate*, 109 P.3d at 611; *accord Lobato*, 70 P.3d at 1166. Nothing about this case calls for the application of any such exception.

## V.  Attorney Fees

¶ 32    Shaw requests an award of its attorney fees incurred on appeal, arguing that Layton's appeal is substantially frivolous and substantially vexatious. *See* § 13-17-102(2), (4), C.R.S. 2016.

¶ 33    We agree with Shaw that Layton's appeal is substantially frivolous. The district court's judgment was so plainly correct and the legal authority is so clearly contrary to Layton's positions that there is really no appealable issue. Thus, Layton's appeal is frivolous as filed. *See Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).

¶ 34    Though Layton asserts that its appeal is not frivolous because it has raised "novel" issues of first impression, the novelty of those issues is nothing more than a reflection of their futility.  See Ozee v. Am. Council on Gift Annuities, Inc., 143 F.3d 937, 941 (5th Cir. 1998) ("The specter of sanctions deters not only the raising of claims that have been considered and rejected repeatedly, but also the pursuit of untested claims that are worthless on their face."); Hilmon Co. (V.I.) Inc. v. Hyatt Int'l, 899 F.2d 250, 253 (3d Cir. 1990) (sanctions for appeals appropriate because, although novel theories were asserted, "at the outset the result of each appeal was obvious: they were utterly without merit and could only result in delay"); Wagner v. Wagner, 371 P.3d 807, 815 (Idaho 2016) (finding appeal frivolous despite party's assertions of issues of first impression); see also Nienke v. Naiman Grp., Ltd., 857 P.2d 446, 449 (Colo. App. 1992) (issue of first impression may be frivolous if the party fails to present a rational argument in support of it); Sullivan v. Lutz, 827 P.2d 626, 628 (Colo. App. 1992) ("[I]f a party fails to present plausible arguments in support of a novel claim, sanctions may be imposed under [section 13-17-102], irrespective of the subjective state of mind of the party or the attorney at the time the claim was

asserted."). The outcome of this appeal was preordained by case law, including, but by no means limited to, *Argus Real Estate*, *Loveland Essential Group*, and *CLPF-Parkridge*, which, though not in all applications directly on point, were sufficiently so that Layton had no chance of prevailing.[14]

¶ 35 Shaw is entitled to an award of reasonable appellate attorney fees against Layton and its counsel, jointly and severally. *See* § 13-17-102(3). We exercise our discretion under C.A.R. 39.1 to remand the case to the district court for a determination of the amount of those fees.

## VI. Conclusion

¶ 36 The judgment is affirmed. We remand the case to the district court to determine the reasonable amount of Shaw's attorney fees incurred on appeal. *See* C.A.R. 39.1.

JUDGE GRAHAM and JUDGE MILLER concur.

---

[14] Layton's appeal is also frivolous as argued, at least in part. For example, Layton misrepresents its positions in the prior case and some of the district court's actions in that case.